IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN MARTINEZ, | ) | |
| | ) | Case No. 23-cv-01741 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | Honorable Judge Durkin |
| REYNALDO GUEVARA, GERI LYNN | ) | |
| YANOW, as special administrator of the | ) | |
| ESTATE OF ERNEST HALVORSEN, | ) | Honorable Magistrate Finnegan |
| HECTOR VERGARA, GERI LYNN | ) | |
| YANOW, as special administrator of the | ) | |
| ESTATE OF JOSEPH MOHAN, RANDY | ) | |
| TROCHE, KEVIN ROGERS, as special | ) | |
| administrator of the ESTATE OF FRANCIS | ) | |
| CAPPITELLI, EDWARD MINGEY, the | ) | |
| CITY OF CHICAGO, JAKE | ) | |
| RUBINSTEIN, and COOK COUNTY, | ) | |
| | ) | |
| Defendants. | ) | |

**DEFENDANTS' JOINT RESPONSE TO PLAINTIFF'S
MOTION FOR ENTRY OF A HIPAA PROTECTIVE ORDER**

Defendants the City of Chicago (the "City"), Reynaldo Guevara, Geri Lynn Yanow as

Special Administrator for Ernest Halvorsen, deceased, and Joseph Mohan, deceased, Randy

Troche, Kevin Rogers as Special Administrator for Francis Cappitelli, deceased, Edward

Mingey, and Jake Rubinstein (collectively "Defendants"), by and through their respective

undersigned counsel, in response to Plaintiff's Motion for Entry of a HIPAA Protective Order

(Dkt. 96), state as follows:

## INTRODUCTION

Plaintiff John Martinez advances exceptionally serious allegations in this matter,

including that Defendants "wholly manufactured," witness identifications that implicated him in

the 1998 murder of Daniel Garcia, deprived of him of water and sufficient food for over thirty-

four hours, and aggressively questioned him until he agreed to sign an incriminating statement contrived by Defendants and a product of "psychological coercion." (*See* Pl. Am. Compl., Dkt. 70 at ¶¶ 1, 2, 3, 64-70, 74, 98, 139, 141, 143.) As a result, Plaintiff declares he was wrongfully convicted, causing him to lose twenty-two years of his life for which he suffered, and continues to suffer, physical and emotional harm. (*See id.*, at ¶¶ 1, 9, 91.)

Because of Plaintiff's claims of physical, psychological, and emotional harm, the parties agreed that a Health Insurance Portability and Accountability Act ("HIPAA") and Mental Health and Developmental Disabilities Confidentiality Act ("MHDDCA") protective order ("HIPAA Order") was necessary to obtain Plaintiff's medical and mental health records. However, the parties were unable to reach agreement on whether Plaintiff's allegations have necessarily waived his psychotherapist privilege relating to the production of his mental health records.

As a result of this impasse, Plaintiff filed his motion seeking entry of a HIPAA Order arguing that no such waiver has occurred, and that the HIPAA Order should include a provision requiring that Plaintiff be permitted to conduct a psychotherapist privilege review on every medical record subpoenaed by Defendants. (*See* Dkt. 96 at 3-4; 96-1 at ¶¶ 10, 11.) But Plaintiff cannot use the psychotherapist privilege as both a "sword and shield," and Defendants respectfully request this Court instead find Plaintiff has waived this privilege and enter an appropriate protective order that permits defense counsel to obtain the records necessary to defend against Plaintiff's serious allegations. (*See* Defendants' redlines to proposed order, attached as Exhibit 1.)

## LEGAL STANDARDS

The purpose of discovery is to "make a trial less a game of blind man's bluff and more a fair contest with the basic issues and facts disclosed to the fullest practicable extent." *United*

*States v. Procter & Gamble Co.*, 356 U.S. 677, 682 (1958). The Court retains broad discretion to manage this discovery process, including through the entry of protective orders. *Geiger v. Aetna Life Ins. Co.*, 845 F.3d 357, 365 (7th Cir. 2017). To that end, Federal Rule of Civil Procedure 26(b)(1) authorizes the Court to order discovery of any material relevant to this litigation, while Rule 26(c)(1) permits entry of a protective order concerning certain discovery upon a showing of good cause. *See* Fed. R. 26(b)(1), (c)(1).

In the context of discovery, relevancy is broadly construed to encompass "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351 (1978). "Relevancy for discovery is flexible and has a broader meaning than admissibility at trial." *White v. Kenneth Warren & Son, Ltd.*, 203 F.R.D. 364, 366 (N.D. Ill. 2001) (citing *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130, U.A.,* 657 F.2d 890, 903 (7th Cir.1981)). Because the requested discovery here—Plaintiff's medical and mental health records—relates to his claims for damages, the discovery is indisputably relevant under Rule 26(b)(1). *Laudicina v. City of Crystal Lake*, 328 F.R.D. 510, 518 (N.D. Ill. 2018) ("No citation is needed to support the proposition that discovery related to a plaintiff's claim for damages is relevant.").

Federal and Illinois statutes protect the confidentiality of medical and mental health information. *See generally* HIPAA, 42 U.S.C. § 1320d et seq.; the Illinois Mental Health and Developmental Disabilities and Confidentiality Act ("IMHDDCA"), 740 ILCS 110/1 et seq.; 20 ILCS 301/30-5; 42 U.S.C § 290dd-2; 42 CFR Part 2. All these confidentiality provisions have exceptions to their protections, however, which permit disclosure pursuant to court order. *See* HIPPA 45 C.F.R. § 164.512(e); IMHDDCA 740 ILCS 110/10(d); 20 ILCS 301/30-5(bb)(2)(E); 42 U.S.C § 290dd-2(b)(2)(C); 42 C.F.R. 2.61-2.65.

Federal Rule of Evidence 501 authorizes courts to define the boundaries of privilege "in light of reason and experience." Fed. R. Evid. 501. As such, the Supreme Court in *Jaffee v. Redmond* determined that certain mental health records are also protected by a psychotherapist-patient privilege. 518 U.S. 1, 10 (1996). But the psychotherapist-patient privilege recognized in *Jaffee* is not absolute and is subject to waiver. *Id.* at 15 n.14. Where a litigant puts his mental state at issue, he waives the psychotherapist-patient privilege, entitling the opposing party to fully investigate the claims injected into the litigation. *Doe v. Oberweis*, 456 F.3d 704, 718 (7th Cir. 2006).

## ARGUMENT

### I.      Plaintiff Has Placed His Medical and Mental Health Condition at Issue, Waiving the Psychotherapist-Patient Privilege

As an initial matter, Plaintiff misrepresents Defendants' position regarding waiver of the psychotherapist privilege, arguing that Defendants' position is that by simply "filing a lawsuit and claiming damages" Plaintiff has "categorically waived any privilege he might have asserted . . . in any context . . . with any mental healthcare provider." (Pl. Mtn., Dkt. 96 at 1.) Undoubtedly, this is not Defendants' position.  Rather, Defendants maintain—consistent with the law in the Seventh Circuit—that when Plaintiff places his psychological state at issue, Defendants have a right to conduct discovery into those claims through his medical and mental health records. *Oberweis*, 456 F.3d at 718. And injecting his psychological state into this case is precisely what Plaintiff has done by: (1) asserting emotional and psychological harm as a component of his damages claim; (2) claiming he was psychologically coerced in violation of his

Fifth Amendment right; and (3) advancing an intentional infliction of emotional distress ("IIED") claim.[1]

The Complaint is replete with claims of emotional and psychological harm. Plaintiff has alleged that his experience of being wrongfully imprisoned was traumatizing both during his incarceration and in the aftermath, including to the present day. Specifically, Plaintiff alleges that in the decades following his arrest, his life was "*consumed by the horror of his wrongful imprisonment*," that he was forced to endure "*severe* trauma" because of his wrongful conviction and that he continues to suffer "*extreme* physical and psychological pain and suffering, humiliation, constant fear, anxiety, deep depression, despair, rage, and other physical and psychological effects." (Pl. Am. Compl., Dkt. 70 at ¶¶ 86, 89, 91)(emphasis added). Similarly, Plaintiff espouses that in connection with his claims that he was denied his due process right to a fair trial, denied his right to be free from self-incrimination, maliciously prosecuted, and that Defendants conspired to frame him for a crime he did not commit, he suffered (among other things) *great mental anguish*, humiliation, degradation, and emotional pain and suffering. (*See id*. at ¶¶ 137, 146, 152, 158, 165, 184, 187, 191, 197) (emphasis added).

Plaintiff's psychological state is also relevant to liability. Plaintiff contends that "extreme psychological coercion" was inflicted on him to obtain a false and involuntary confession in violation of his Fifth Amendment right. (*Id*. at ¶ 141.) And, Plaintiff brings an Illinois state law claim for intentional infliction of emotional distress ("IIED") (Count VIII), alleging, in part, that

---

[1] Plaintiff also places a great deal of emphasis on the fact that the Defendants previously agreed to a review period in the *Gonzalez* case. *See Gonzalez v. Guevara, et. al*., 22-cv-6496, Dkt. 128 (Hon. J. Kness). However, a discovery agreement in one case does not bind parties in another. In *Gonzalez*, which involves a different plaintiff and several different defendants, the defendants made a strategic decision to agree to the review period , but never conceded that they were obligated to do so. Not to mention the defendants there specifically noted that the agreement was not to be construed to apply to any other *Guevara* cases. (*See*, Email Correspondence attached as Exhibit 2.)

Defendants' actions were "undertaken with the intent to cause, or were in reckless disregard of the probability that their conduct would cause, severe emotional distress to Plaintiff." (*See id.* at ¶¶ 186.) To be sure, Plaintiff has explicitly placed his physical and emotional health over the last three decades at issue in this case.

In comparing medical privileges to the attorney-client privilege, courts have stated that "waiver is based upon the obvious principle of fairness that a party 'cannot inject his or her treatment, conditions, or symptoms into a case and expect to be able to prevent discovery of information relevant to those issues.'" *Kronenberg v. Baker & McKenzie LLP*, 747 F. Supp. 2d 983, 989 (N.D. Ill. 2010) (citing *Santelli v. Electro–Motive,* 188 F.R.D. 306, 309 (N.D. Ill. 1999)).[2] Courts have been very clear that a party "cannot use a privilege as both a shield and a sword." *Kronenberg*, 747 F. Supp. 2d at 989 (citing *In re Grand Jury Proceedings,* 219 F.3d 175, 182 (2d Cir. 2000)).

Moreover, the "rule espoused in *Oberweis*" has been described as "straightforward and unequivocal." *Taylor v. City of Chicago*, No. 14 C 737, 2016 WL 5404603, at *3 (N.D. Ill. August 28, 2016); *see also Laudicina*, 328 F.R.D. at 514 (noting that "the language that the Seventh Circuit uses in *Oberweis* is broad and sweeping," and "the judges on the Seventh Circuit are careful writers: They say what they mean and mean what they say. The broad language hedges no bets."). Here, Plaintiff chose to bring claims premised in part on his mental health and to allege damages based on *severe* impact to his mental and physical health resulting directly from Defendants' purported misconduct. (Pl. Am. Compl., Dkt. 70 at ¶¶ 86, 89, 91, 186.) It is

---

[2] *In re Grand Jury Proceedings,* 219 F.3d 175, 182 (2d Cir.2000) ("implied waiver may be found where the privilege holder 'asserts a claim that *in fairness* requires examination of protected communications.'") (attorney-client privilege); *Lorenz v. Valley Forge Insurance. Co.,* 815 F.2d 1095, 1098 (7th Cir.1987) ("Implicit disclosure can occur when a holder ... relies on a legal claim or defense, the truthful resolution of which will require examining confidential communications.").

baffling how, considering his own allegations, Plaintiff is claiming that he has not yet placed his mental health directly as issue in this litigation. (*See* Pl. Mtn., Dkt. 96 at 6.) Put simply, Plaintiff cannot maintain an action for medical and mental health damages, a claim that he was psychologically coerced into incriminating himself, or a standalone claim of IIED, but then also assert privilege and prevent discovery of information about Plaintiff's mental health conditions. *See Oberweis*, 456 F.3d at 718.

Nonetheless, Plaintiff still insists that he can reserve the right to assert privilege until after he previews his records, essentially permitting him to choose which records to disclose and which records to insulate from discovery. *(See* Pl. Mtn., Dkt. 96 at 3-4.) But this precise position, advanced by the same plaintiff's counsel, has been directly rejected by multiple judges in the Northern District.[3] By way of example, Magistrate Judge Valdez explained that "[Plaintiff] contends that his proposed production scheme [an advance preview of records] is necessary to ensure that any privileges are not waived. Plaintiff misunderstands that, by putting his psychological history at issue, he has *already* waived any such privileges related to his psychological records." *Kluppelberg v. Burge, et al.,* No. 13 C 3963, Dkt. 136, at 2 (April 10, 2014, J. Valdez) (emphasis in original) (attached as Ex.3); *see also Coleman v. City of Chicago*, No. 1:18-cv-00998, 2019 WL 7049918, at *4 (N.D. Ill. Dec. 23, 2019) (finding waiver of the psychotherapist privilege stating, "the Court shares Defendants' concern that allowing a plaintiff to cherry-pick favorable mental health records and claim privilege over records weakening their emotional damages claims, thereby enabling the plaintiff to use the privilege as both shield and sword.").

---

[3] Plaintiff argues that the law in the Northern District has adopted the "middle ground approach." (Pl. Mtn., Dkt. 96 at 5.) However, this simply is not true. Many courts in this district have adopted the broad approach in line with the Seventh Circuit's decision in *Oberweis* as argued *infra* at 7-8.

Indeed, this view has since been echoed by multiple courts in this district. *See*, *e.g.*, *Laudicina*, 328 F.R.D. at 520 ("Although the mental health records are privileged, Plaintiff waived the privilege by placing his mental health at issue."); *Liebich v. DelGuidice*, No. 20 C 2368, Dkt. 99, at *3 (N.D. Ill. Feb. 12, 2021) (holding "plaintiff has waived any psychotherapist-patient privilege that might otherwise apply" because plaintiff "put his mental state squarely at issue in this case.") (attached as Ex. 4); *Jakes v. Boudreau*, No. 19 C 2204, 2020 WL 5297007, at *2 (N.D. Ill. Sept. 4, 2020) ("[T]he Court need not decide in this case whether the broad or middle-ground approach [to waiver] governs. Because Plaintiff has alleged emotional-distress damages and those allegations go beyond 'garden variety,' as follows, the Court concludes that Plaintiff has waived his psychotherapist-patient privilege under either approach.").

While Plaintiff argues this Court should apply the "middle ground" approach to determine whether Plaintiff has pleaded only "garden variety" emotional damages— and thus not waived his psychotherapist-patient privilege — this argument bears no merit. Plaintiff's IIED claim *alone* eviscerates any claim that his damages are simply "garden variety." *Brown v. City of Chicago*, No. 19 CV 4082, 2023 WL 3320427, *3 (N.D. Ill. May 9, 2023) (rejecting the "garden variety" emotional damages argument and holding the plaintiff's "state law intentional infliction of emotional distress claim puts his mental condition in controversy" and as a result the plaintiff waived the privilege and could be subjected to a Rule 35 examination). Plaintiff's IIED claim requires Plaintiff to prove he suffered <u>*severe*</u> emotional distress as an element of his claim. Severe emotional distress has been defined as distress that "….is *so severe* that no reasonable man could be expected to endure it…" *Schweihs v. Chase Home Finance, LLC*, 2016 IL 120041, ¶ 51, 77 N.E.3d 50, 63 (Ill. 2016) (citations omitted) (emphasis added). Moreover, Plaintiff's Fifth Amendment claim hinges on his contention that he was psychologically coerced, a theory

that entitles Defendants to explore Plaintiff's psychological state leading up to and following the underlying questioning.

Even setting the IIED and Fifth Amendment claims aside, Plaintiff is seeking emotional damages for twenty-two years of life he proclaims he lost because the Defendants purposefully framed him for a murder he did not commit. "It is hard to conceive of any situation in which these emotional damages constitute 'garden variety,'" and the type of actions and damages alleged by Plaintiff here are far beyond "just ordinary negative emotions." *See Coleman*, 2019 WL 7049918, at * 2 (finding Plaintiff waived psychotherapist-patient privilege under the narrow, broad and middle ground approaches).

As this *severe* emotional distress is an essential element of his IIED claim, as well as a resounding theme to his overall Complaint, Defendants cannot defend against these claims unless they are permitted to obtain any available evidence of such allegedly severe emotional distress. *See Jakes*, 2020 WL 5297007, at * 2 (psychotherapist privilege waived by nature of IIED claim). Thus, Plaintiff has affirmatively placed his medical and mental health condition at issue in this litigation, thereby waiving any privilege that he would have been otherwise able to assert.

Significantly, Plaintiff has not *yet* asserted the psychotherapist-patient privilege, nor has he pointed to a specific set of documents that are the subject of concern. Rather, his concern is both general and hypothetical in nature. Privilege reviews are not intended to enable obstruction, and the purpose of privilege is not such that a party can pick-and-choose what evidence is favorable to it. *See, e.g. Eli Lilly and Co. v. Zenith Goldline Pharmaceuticals, Inc.*, 149 F.Supp.2d 659, 661 (S.D. Ind., July 4, 2001) (In discussing waiver of attorney-client privilege, "A party waiving the privilege may not merely pick and choose, disclosing favorable

communications and concealing unfavorable ones."). Plaintiff is not entitled to an advanced preview of the records as a precondition to Defendants' entitlement to the medical records, and his endeavor to do so will be futile and serve only to frustrate the discovery process and needlessly delay Defendants' receipt of the documents.[4]

## II.      Good Cause Exists to Enter a HIPAA/Mental Health Protective Order

Discovery of Plaintiff's medical and mental health conditions is relevant and proportional to the needs of the case. Plaintiff's current and past medical and mental health records will directly inform Defendants about the true nature of his alleged damages—including the cause, nature, extent, and duration of Plaintiff's claimed injuries and conditions. Defendants will additionally be required to gather evidence of Plaintiff's baseline medical and mental health conditions prior to the alleged incident. This information is indispensable to determining whether there has been any change in the nature and extent of Plaintiff's conditions, based on his now-claimed damages of physical and psychological pain and suffering.

Indeed, there is *no* other source of evidence that can sufficiently demonstrate the true nature of Plaintiff's medical and mental health condition. If Defendants are unable to fully discover Plaintiff's mental and medical health conditions by obtaining records, they will be unduly—and irreparably—prejudiced in their defense against not only Plaintiff's claimed mental and physical damages, but also critical legal elements of his coerced confession and IIED claims.

In addition, disclosure of Plaintiff's medical and mental health records is more important to the interests of substantial justice than the interest of protecting his relationship with his

---

[4] Plaintiff attempts to argue that his proposal will somehow save time. (Pl. Mtn., Dkt. 96 at 1.) Yet, Plaintiff's proposal delays Defendants receiving and reviewing the discoverable materials Defendants would otherwise be directly entitled to from Plaintiff's medical provider(s). Furthermore, should Plaintiff claim privilege over some or all of the records, it would likely result in additional litigation regarding whether the privilege was properly invoked.

physicians and mental health professionals. Indeed, Plaintiff and his counsel already made the conscious decision to inject his medical and mental health condition into the case. The Complaint states, point-blank, that Plaintiff's mental health condition has suffered. Plaintiff having already decided of his own accord to place his mental health and medical condition into the public record, there is no longer an interest in need of protecting sufficient to overcome the good cause for Defendants to obtain health information in discovery to determine the cause, nature, extent, and duration of the very physical and psychic injuries/conditions that Plaintiff ascribes to Defendants' actions.

All of which to say, a protective order is necessary here because Plaintiff's medical and mental health providers will not disclose records unless the Court enters a protective order permitting such disclosure pursuant to the exceptions in HIPAA (45 C.F.R. § 162 and 164), IL MHDDCA (740 ILCS 110/3), and Illinois state and federal law that protects certain rehabilitation records related to drug and alcohol use (20 ILCS 301/30-5, 42 U.S.C. § 290dd-2, and 42 C.F.R. Part 2). Accordingly, Defendants have submitted their proposed protective order to the Judge's proposed order email inbox—also attached hereto as Exhibit 1[5]—consistent with this Court's standing orders.

## CONCLUSION

WHEREFORE, Defendants respectfully request the Court find Plaintiff has waived his psychotherapist-patient privilege and enter Defendants' Proposed HIPAA and Mental Health Protective Confidentiality Order, pursuant to Federal Rule of Civil Procedure 26(b)(1), and for such further relief as this Court deems appropriate.

---

[5] The only difference between Defendants' and Plaintiff's proposed orders are the redlines reflected in Exhibit 1.

Dated: October 11, 2023

Respectfully submitted,

/s/ Eileen E. Rosen
EILEEN E. ROSEN, Atty No. 6217428
*Attorney for City of Chicago*

/s/ Laura M. Ranum
LAURA M. RANUM, Atty. No. 6300636
*Special Assistant Corporation Counsel for*
*Defendants Vergara, Troche, Mingey, and*
*Special Representatives Yanow and Rogers*

Eileen E. Rosen
Andrew J. Grill
Austin G. Rahe
Catherine M. Barber
Jessica Zehner
Lauren M. Ferrise
Theresa B. Carney
Rock, Fusco & Connelly
333 West Wacker Drive, 19th Floor
Chicago, IL 60606
P: (312) 494-1000
erosen@rfclaw.com

James G. Sotos
Josh M. Engquist
Laura M. Ranum
Allison L. Romelfanger
Kyle T. Christie
Maurice C. Hunt
THE SOTOS LAW FIRM, P.C.
141 W. Jackson Blvd, Suite 1240A
Chicago, IL 60604
P: (630) 735-3300
lranum@jsotoslaw.com

/s/ Misha Itchhaporia
MISHA ITCHHAPORIA, Atty No. 6292695
*Attorney for Reynaldo Guevara*
Steven B. Borkan
Timothy P. Scahill
Graham P. Miller
Emily E. Schnidt
Molly Boekeloo
Whitney Hutchinson
Mischa Itchhaporia
Borkan & Scahill
20 S. Clark Street, Suite 1700
Chicago, IL 60603
P: (312)-580-1030
mitchhaporia@borkanscahill.com

s/ Kenneth M. Battle
KENNETH M. BATTLE, Atty No. 6269381
*Attorney for Jake Rubenstein*
Kenneth M. Battle
Michele J. Bruan
O'Connor & Battle, LLP
111. W. Jackson Blvd, Suite 1700
Chicago, IL 60604
P: (312) 786-4600

## **CERTIFICATE OF SERVICE**

I certify that on October 11, 2023, I electronically filed the foregoing **Defendants' Joint Response to Plaintiff's Motion for Entry of a HIPPA Protective Order** with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following CM/ECF participants listed in the below service list.

**_Attorneys for Plaintiff:_**
Anand Swaminathan (anand@loevy.com)
Annie D. Prossnitz (prossnitz@loevy.com)
Arthur R. Loevy (arthur@loevy.com)
Jonathan I. Loevy (jon@loevy.com)
Sean Starr (sean@loevy.com)
Steven E. Edwards (steve@loevy.com)
Loevy & Loevy
311 North Aberdeen, 3rd Floor
Chicago, IL 60607
P: (312)243-5900

**_Attorneys for the City of Chicago_**
Eileen E. Rosen (erosen@rfclaw.com)
Andrew J. Grill (agrill@rfclaw.com)
Austin G. Rahe (arahe@rfclaw.com)
Catherine M. Barber (cbarber@rfclaw.com)
Jessica Zehner (jzehner@rfclaw.com)
Lauren M. Ferrise (lferrise@rfclaw.com)
Theresa B. Carney (tcarney@rfclaw.com)
Rock, Fusco & Connelly
333 West Wacker Drive, 19th Floor
Chicago, IL 60606
P: (312) 494-1000

**_Attorneys for Reynaldo Guevara_**
Steven B. Borkan (Sborkan@borkanscahill.com)
Timothy P. Scahill (tscahill@borkanscahill.com)
Graham P. Miller (gmiller@borkanscahill.com)
Emily E. Schnidt (eschnidt@borkanscahill.com)
Molly Boekeloo (mboekeloo@borkanscahill.com)
Whitney Hutchinson (whutchinson@borkanscahill.com)
Mischa Itchhaporia (mitchhaporia@borkanscahill.com)
Borkan & Scahill
20 S. Clark Street, Suite 1700
Chicago, IL 60603
P: (312)-580-1030

**_Attorneys for Cook County_**
Kelli Huntsman (kelli.huntsman@cookcountyil.gov)
Cook County State's Attorney's Office
Civil Actions Bureau-Affirmative & Complex Litigation
500 Richard J. Daley Center
50 W. Washington, Room 500
Chicago, IL 60602
P: (312)-603-3151

**_Attorneys for Jake Rubenstein:_**
Kenneth M. Battle (kbattle@mokblaw.com)
Michele J. Braun (mbraun@mokblaw.com)
O'Connor & Battle, LLP
111 W. Jackson Blvd, Suite 1700
Chicago, IL 60604
P: (312) 786-4600

/s/ Laura M. Ranum
LAURA M. RANUM, Attorney No. 6310033

14