IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JOHN MARTINEZ, | ) | |
| | ) | Case No. 23 C 01741 |
| *Plaintiff*, | ) | |
| | ) | Hon. Judge Thomas M. Durkin |
| *v.* | ) | District Judge |
| | ) | |
| REYNALDO GUEVARA, *et al.,* | ) | Hon. Judge Sheila M. Finnegan |
| | ) | Magistrate Judge |
| *Defendants.* | ) | |
| | ) | **JURY TRIAL DEMANDED** |

## MOTION TO COMPEL DEFENDANTS TO PROCEED WITH
## THIRD PARTY DEPOSITIONS

Arthur Loevy
Jon Loevy
Anand Swaminathan
Steven Art
Sean Starr
Annie Prossnitz
Meg Gould
LOEVY & LOEVY
311 North Aberdeen St., 3rd Fl.
Chicago, IL 60607
(312)243-5900
prossnitz@loevy.com

**INTRODUCTION**

Plaintiff John Martinez, by and through his undersigned counsel, respectfully moves this Court to: (a) compel Defendants to provide dates of availability for the depositions of Melloney Parker, Jesus Fuentes, and Jose Tinajero; and (b) affirm that Plaintiff may question those deponents first at the deposition.

Plaintiff files this motion with a simple request: to apply the Federal Rules of Civil Procedure in straightforward fashion and permit Plaintiff to go forward with the depositions of several third party witnesses he has prioritized for service of deposition subpoenas out of the dozens of witnesses in the case.

The central dispute is questioning priority. Plaintiff's position is that he should get to go first because he subpoenaed and noticed the depositions first. Even if the equities of each witness are considered, they are all witnesses Plaintiff will call in his case-in-chief, and so Plaintiff will be prejudiced if they become unavailable for trial and Plaintiff is forced to present deposition testimony in which Plaintiff was not able to question the witnesses first.

There is no basis to switch the order of questioning of these witnesses. Defendants' position is that "witness alignment" should determine questioning priority, such that a party should get to depose those witnesses that are "hostile" to them. But even that vague criterion does not favor Defendants. Regardless, during the conferral process Defendants identified which, of the witnesses that Plaintiff had first served, they believed they nonetheless should get to question first: they identified only two (Melloney Parker and Jose Tinajero) of the three witnesses that Plaintiff had served. Although that should have presumably narrowed the range of disputes, so that Plaintiff could go forward with the remaining deposition (Jesus Fuentes) while the parties confer about their remaining disputes, Defendants refused to permit the depositions to go forward or to offer dates of availability. The Court should thus require Defendants to propose deposition dates for the witness over which there is no

1

dispute (Jesus Fuentes), and resolve on the merits the parties' dispute over the remaining deposition of Melloney Parker.

The conferral process on this issue has been lengthy. Plaintiff has made every effort to confer and reach compromises on both questioning order and timing of these depositions, but those efforts have not succeeded. More than three months after the conferral process began, Defendants keep moving the goalposts, Defendants refuse to propose deposition dates, and depositions are delayed indefinitely. The parties are now at impasse.

## STATEMENT OF FACTS AND LOCAL RULE 37.2 STATEMENT

**A. Plaintiff serves deposition subpoenas and seeks to question those witnesses first based on first service.**

This case has been ongoing since March 2023, and discovery commenced thereafter. Dkt. 1. Plaintiff issued written discovery in July 2023, the parties collectively identified dozens of witnesses on their Rule 26 disclosures on August 8, 2023, and Defendants sent written discovery beginning in mid-August 2023.

To ensure that Plaintiff could timely question three critical third-party witnesses that he intends to call in his case in chief, Plaintiff Martinez prioritized serving the witnesses with deposition subpoenas. Specifically, well after discovery had commenced, on August 25 Plaintiff provided Defendants with proper notice of subpoenaed depositions for Melloney Parker and Jesus Fuentes, along with proofs of service; and served notice of his motion to depose an incarcerated witness, Jose Tinajero, which was subsequently granted. All three witnesses are third parties who implicated Plaintiff in the underlying crime, and who Plaintiff believes gave false statements implicating him based on improper police coercion.

Plaintiff informed Defendants that the noticed dates were placeholders, and that, if Defendants were unavailable, Plaintiff was willing to work with Defendants to ensure that the depositions took place on dates convenient to the witnesses and all counsel. *See* Group Ex. 1 (Aug 28

2

email of A. Prossnitz). Plaintiff asked Defendants to provide their availability on the subpoenaed dates and provide alternatives as requested. *Id.*

> **B. Defendants lodge an across-the-board objection to all depositions served by plaintiffs in seven Guevara cases and claim "witness alignment" should dictate questioning priority.**

After receiving Plaintiff's deposition notices, Defendants did not provide their availability or propose alternative dates, as requested. Rather, in early September Defendants, along with the defendants in other recent Guevara cases (represented by the same sets of counsel for the City and its officers), lodged an across-the-board objection to all of the depositions subpoenaed and noticed in August and September 2023 by the Guevara plaintiffs in seven cases.[1] The Guevara defendants claimed that the depositions in this case could not go forward because they disputed—across all seven Guevara cases—that the Guevara plaintiffs were entitled to question first any witnesses that they had served and noticed.

At the same time, on August 28, 2023, Defendants in this case and other recent Guevara cases sent out their own deposition notices for additional witnesses (without underlying service of deposition subpoenas).[2] Defendants in this case noticed depositions (without service) for six witnesses: Thomas Kelly, Esteban Rodriguez, Margarita Casiano, Angel Serrano, Manuel Rodriguez, and Jesus Fuentes.[3]

Plaintiff Martinez, along with the other Guevara plaintiffs, explained that he was entitled to first question Parker, Fuentes, and Tinajero, whose testimony he had prioritized in order to meet his

---

[1] The seven Guevara-related lawsuits are for the following Plaintiffs: (1) Gamalier Rivera, (2) Eruby Abrego, (3) John Martinez, (4) Juan & Rosendo Hernandez, (5) Edwin Davila, (6) Julio Lugo, and (7) Johnny Flores.

[2] Notably, none of the Defendants in any of the seven recent Guevara case has provided any proof of service for any depositions. E.g., Aug. 29 Email of R. Brown; Sept. 28 Email of R. Brown. Thus, Plaintiff assumes that their noticed witnesses have not yet been served.

[3] Plaintiff had been trying to find Mr. Fuentes for weeks and eventually got him served on September 17, 2023, and provided noticed of same on September 20, 2023. So, while Defendants sent notice first, Plaintiff had already been trying to serve him, and in fact did serve him first.

3

burden to prove his claims. Plaintiff explained his position that service of a deposition subpoena determined questioning priority, and that he had served the witnesses first. Group Exhibit 1 (Sept. 5 Email of A. Swaminathan; Sept. 12 Email of A. Swaminathan). Plaintiff further explained that even if the equities as to each witness were considered individually, they weighed in his favor, as he had (a) served and noticed the depositions first: (b) intended to call those witnesses in his case-in-chief in light of his burden of proof; (c) doing so would aid the jury's comprehension of the evidence at trial should the witnesses become unavailable, and/or (d) the third party witnesses had given testimony against him in his criminal case, or participated in the police investigation against him.

During the parties' first meet and confer on October 5, Defendants articulated their view that "witness alignment," and not service of a deposition subpoena or notice of a deposition, should dictate questioning priority across all of the Guevara cases. Group Exhibit 1 (Oct. 5 Email of A. Swaminathan). Despite repeated requests, Defendants refused to identify which depositions the Guevara Plaintiffs served and noticed that Defendants objected to on "witness alignment" grounds, including whether that included Parker, Fuentes and Tinajero.

### C. Defendants refuse to proceed with the depositions Plaintiffs served and noticed absent an across-the-board agreement on depositions in all seven Guevara cases.

Defendants refused to proceed with any depositions without a global agreement. Group Exhibit 1 (Oct. 11 Email of A. Romelfanger). The parties thus exchanged emails and conferred for an additional two months. Group Exhibit 1. Defendants first insisted on an exchange of lists of served and/or noticed witnesses on which each party claimed questioning priority. Group Exhibit 1 (Sep. 22 Email of Tim Scahill). Plaintiff expressed concern that the exchange would serve only to delay negotiations but agreed to proceed as Defendants wanted Group Exhibit 1 (Oct. 5 Email of A. Swaminathan). The parties exchanged lists on October 11. Group Exhibit 1 (Oct. 11 Email of A. Swaminathan, Oct. 11, 2023 Email of A. Romelfanger).

Anticipating more delay, before the parties' conferral Plaintiffs had asked Defendants in

4

advance to "be ready to discuss compromises and agreements to get to resolution, now that the parties have exchanged lists." Group Ex. 1 (Oct. 18 Email of A. Swaminathan). Yet on the call, even though the Guevara plaintiffs proposed trades, the Guevara Defendants stated they needed additional time to confer internally before negotiation. Group Ex. 1 (Oct. 20 Email of A. Swaminathan). More than a week passed without Defendants providing dates for another call, despite Plaintiffs' requests. *Id.* (Oct. 26 Email of A. Swaminathan) ("Counsel, we have been extremely patient. By tomorrow, please provide dates you are available early next week.").

On October 27, Defendants finally responded, but rather than offer dates or specific witness compromises, proposed an entirely different process: a draft, during which the parties would alternate requests for depositions that Plaintiffs had prioritized for service, without regard for Plaintiffs' timely service of subpoenas for witnesses key to their case-in-chief, and also without regard for "witness alignment." Group Ex. 1 (Oct. 27, Email of T. Scahill). After additional defense delay (Group Ex. 1 (Oct. 27 Email of T. Scahill to Nov. 7 Email of T. Carney), during a November 7 conference, Plaintiffs objected to the draft proposal as prejudicial, and Defendants finally agreed to commence witness-specific negotiations. Group Ex. 1 (Nov. 8 Email of R. Brown).

Despite repeated requests by Plaintiff, Defendants did not provide dates of availability for a next conference until November 15. *See* Group Ex. 1 (Nov 15 Email of T. Carney). The parties conferred on November 16, during which time Plaintiffs proposed certain trades and the parties agreed to exchange written proposals on November 17. Defendants offered a single global resolution in their November 17 proposal. Group Exhibit 1 (Nov 17 Email of T. Scahill). The Guevara Plaintiffs provided a comprehensive November 17 proposal that included a global resolution, as well as numerous individual case resolutions, including in this case. *See* Group Exhibit 1 (Nov 17 Email of A. Swaminathan. After multiple requests by the Guevara Plaintiffs, the Guevara Defendants finally responded on December 1 with a blanket rejection, indicating that they would not agree either to the

5

global or individual proposals, declining to propose any counters, and stating that the parties were at impasse. Group Exhibit 1 (Dec. 1 Email of T. Scahill).

### D. Defendants' own proposals for resolution have not claimed either Fuentes for their side, and Defendants' proposal includes a one-for-one exchange in this case that Plaintiff accepted.

Notably, none of the parties' proposals have allocated Jesus Fuentes to Defendants. For their part, in each of Defendants' proposals, they have not claimed they should be entitled to question them first. *See* Group Ex. 1 (November 17 Email of T. Scahill; Nov. 8 Email of T. Scahill; Oct. 11 Email of A. Romelfanger) (stating only that Defendants wanted questioning priority over Ms. Parker and Mr. Tinajero). So, from Plaintiff's perspective, there does not appear to be any dispute regarding Mr. Fuentes and Plaintiff should be permitted to go forward with his deposition. Yet, Defendants have refused to go forward.

With regard to the remaining two witnesses in dispute, Parker and Tinajero, Plaintiffs' November 17 proposal for this case included an offer to simply let Defendants go first with Tinajero. And, to bring this issue to resolution without the need for additional delay, Plaintiff offered to let Defendants also go first with Mr. Fuentes, and all five of the witnesses Defendants noticed without service. In other words, Plaintiff's proposal was that Plaintiff would go first with *one witness*, Melloney Parker, and Defendants could go first with *the seven other witnesses the parties had noticed so far.* Group Ex. 1 (Nov. 17 Email of A. Swaminathan). Defendants' December 1 email rejected that agreement.

### E. Defendants have refused to provide a timeline for when they agree depositions can proceed.

Defendants have also stated vaguely with respect to all depositions, across all of the Guevara cases, that they cannot go forward "until we obtain the documents necessary for us to examine these witnesses from entities such as the State's Attorney, defense attorneys, Cook County Clerk and Court Reporters." Group Ex. 1 (Oct. 11 Email of A. Romelfanger). In response, Plaintiff has repeatedly explained that he was amenable to Defendants' thoughts regarding when to conduct the specific

6

depositions of certain individual witnesses, but that he would not agree to indefinitely delay all depositions given how long this case has been in discovery, the current discovery deadline, and Defendants' delay in seeking discovery that they now claim is critical to proceed with depositions. To date, Defendants still have not identified specific depositions that they insist should be delayed, or provided particular reasons, or offered their own proposed timeframe for the depositions. Group Ex. 1 (Oct. 13 Email of R. Brown) ("[A]s we have indicated repeatedly, we are willing to work with you as to dates, but we need your cooperation in disclosing availability, regardless of who questions first at the deposition.").

Instead, the Guevara defendants have simply self-helped themselves to a months-long delay in proceeding with depositions. After more than three months of trying to work with Defendants to reach a compromise so these depositions can proceed, the parties are at impasse.[4]

## ARGUMENT

Plaintiff has served the witnesses at issue first, and in order to meet his burden of proof is likely to call every one of these witnesses in his case in chief. Every legal principle that potentially applies here justifies Plaintiff questioning these witnesses first. Accordingly, this Court should compel Defendants to provide dates of availability for the depositions of Melloney Parker, Jesus Fuentes, and Jose Tinajero without further delay; and affirm that Plaintiff may question those deponents first at the deposition.

### I. Plaintiff Served First and So Should be Permitted to Question these Witnesses First.

Plaintiffs' position is simple: for the witnesses Plaintiff has prioritized and served first, he should be able to question them first. Courts adjudicating similar disputes have appropriately rewarded the diligence of the party that has gone out and perfected service of a subpoena on a witness, allowing

---

[4] This dispute is being litigated across the various cases involving Defendant Guevara that were filed in early 2023, and Plaintiff's counsel is filing nearly identical motions to this one across those cases.

them to question first. *See, e.g.*, *Occidental Chem. Corp. v. OHM Remediation Services*, 168 F.R.D. 13, 14 (W.D.N.Y. 1996) (holding that where two subpoenas were served, the first served took priority). Plaintiff seeks to apply that simple principle here, and on that basis the motion should be granted.

To be clear, Plaintiff's position is that service—not notice—should control the sequence of questioning. If notice controlled, then in each case a party could simply send out a notice for all of the important witnesses in the case and go first. Taken to its extreme, it would be a race to see which party was quicker to push "Send" after completing the Rule 26(f) conference, or perhaps which party's packets of email data happened to traverse the internet faster. In addition, a party could simply notice as many depositions as it likes and then indefinitely delay (or fail) in serving them, self-helping themselves to delay and/or the strategic sequencing of depositions as they choose.

Both the Federal Rules and caselaw recognize the problem with relying on notice, making clear it is not the favored approach. *See* Fed. R. Civ. P. 26, 1970 Committee Comments ("This new provision is concerned with the sequence in which parties may proceed with discovery and with related problems of timing. . . A priority rule developed by some courts, which confers priority on the party who first serves notice of taking a deposition, is unsatisfactory in several important respects. . . . . Subdivision (d) is based on the contrary view that the rule of priority based on notice is unsatisfactory and unfair in its operation."); *Lumpkin v. Kononov*, 2013 WL 1343666, at *1 (N.D. Ind. 2013) ("Under the federal rules, a discovery priority is not established based upon which party noticed a deposition first."); *U.S. v. Bartesch*, 110 F.R.D. 128, 129 (N.D. Ill.,1986) ("[I]t is clear that the priority rule, which confers priority on the party who first serves notice of taking a deposition, is abolished by Rule 26(d).").

Moreover, Defendants have rejected Plaintiff's offer—purely for purposes of achieving a global compromise, not based on governing law—that the parties agree that first notice governs deposition priority. Thus, no party argues in this litigation that first notice should dictate.

Nevertheless, to the extent courts have sometimes looked to notice to govern the order of questioning, *see e.g.*, *Tate v. City of Chicago*, No. 18 C 7439, 2020 WL 5800817, at *2 (N.D. Ill. Sept. 29, 2020), Plaintiff first noticed the depositions of the witnesses at issue in this motion. So, applying a criteria based on notice also supports Plaintiff questioning these third party witnesses first.

## II. The Equities Favor Plaintiff Questioning these Witnesses First.

Even applying a case-by-case consideration of the equities, Plaintiff should get to question each of these witnesses first.

First, Plaintiff bears the burden of proof, and intends to call each of these witnesses in his case-in-chief at trial, cross-examining them where necessary about their past statements procured during Defendants' investigation. Federal Rule of Civil Procedure 30(c) dictates that "[t]he examination and cross examination of a deponent proceed as they would at trial under the Federal Rules of Evidence, except Rules 103 and 615." Fed. R. Civ. P. 30(c)(1). On this basis alone, Plaintiff should be permitted to question these witnesses first at a deposition.

Second, Plaintiff should be allowed to question the witnesses first because it will aid the jury's comprehension of the evidence at trial. In the event that these witnesses are unavailable for trial, their deposition testimony may be read at trial in lieu of live testimony. If Defendants have questioned first, and Plaintiff second, then the testimony will be backwards and will need to be heavily edited for trial. In such circumstances, judges in this District repeatedly have allowed plaintiffs to question witnesses first, even when they have not first served them or noticed their depositions. *E.g.,* Group Ex. 2, *Walker v. Burge*, No. 21 C 4231 (N.D. Ill.), Dkt. 222 (joint statement of dispute) & Dkt. 223 (Order of July 7, 2023); Group Ex. 3, *Rivera v. Guevara*, No. 12 C 4428 (N.D. Ill.), Trans. Of March 12, 2013 Hrg. & Dkt. 54 (Order of March 12, 2013). In *Rivera*, Judge Rowland specifically focused on the plaintiff's burden to prove his case and on the importance of the third-party witness at issue over all other collateral issues. *See* Ex. 3, at 14:10-12 (finding that despite the fact defendants first served the

9

deposition subpoena, the Court was "really concerned that [Plaintiff] has the burden [] and [this witness was] going to be probably the most important witness in the case."). Accordingly, even using Defendants' preferred "witness alignment" framework, Plaintiff would have priority to question these witnesses first.

Indeed, this dispute is being litigated across the various cases involving Defendant Guevara that were filed in early 2023, and Plaintiff's counsel is filing nearly identical motions to this one in those cases. Across these cases there are a number of key third party witnesses that are out of state or move regularly. Elderly witnesses are also a central concern, as this case arises from a criminal investigation and prosecution that commenced many decades ago. Such witnesses are likely, and in some cases certain, to be unavailable for trial, and thus their deposition testimony will be what the jury hears. In Plaintiff's experience, a deposition in which Defendants question first, eliciting the witness's testimony after long periods of questioning on background and other extraneous matters, and in non-chronological order, after which Plaintiff follows up with questions afterwards, will create a transcript that is disjointed and confusing to the jury. Plaintiff would be severely prejudiced, effectively prevented from presenting critical testimony to the jury in a clear and coherent fashion during his case-in-chief.

Third, in most cases, the witnesses at issue either provided a statement to the police incriminating Plaintiff, testified against Plaintiff in his criminal case, participated in the police investigation against Plaintiff, or are hostile to Plaintiff, which are additional recognized reasons to let Plaintiff question them first at their depositions. *See Lumpkin v. Kononov*, 2013 WL 1343666, at *1 (N.D. Ind. Apr. 3, 2013) ("[T]he party whose witness is being deposed generally knows what the witness's testimony will be, and the purpose of the deposition is to allow the other side to find out what the witness knows about the matter."). In some cases, the witnesses have more recently recanted their prior statements incriminating Plaintiff, but that does not alter the equities; Defendants will still use their past statements and testimony to impugn Plaintiff and in that way use these witnesses to elicit

10

testimony against Plaintiff. Group Ex. 2 at pg. 15 (Order in *Walker*). And again, regardless of whether these witnesses later recanted or not, Plaintiff will call them in his case-in-chief.

Applying these factors here, the equities also favor Plaintiff being able to question these witnesses first. All three witnesses at issue identified Plaintiff as the perpetrator, implicating him during police interviews, at his criminal trial, or both. After her interactions with Defendant Guevara, Parker identified Plaintiff and her testimony was the critical testimony against Plaintiff at trial. Jesus Fuentes likewise identified Plaintiff in a lineup (after previously telling police that he did not see anything). Neither of them has ever recanted their prior statements implicating Plaintiff, making them witnesses that are "hostile" to Plaintiff by Defendants' own standard. Mr. Tinajero, meanwhile, was Plaintiff's co-defendant and remains incarcerated for this crime. He gave a statement implicating Plaintiff in the crime. If any of these witnesses were to become unavailable at trial, Plaintiff would be prejudiced if he could not preserve their testimony, in an organized and coherent fashion, by conducting an initial trial exam. And these are all critical witnesses in Plaintiffs case-in-chief.

Finally, we note that Plaintiff's and Defendants' counsel in this case have all litigated against each other in many other cases. And it is true that in various cases, the attorneys on both sides of this case have taken the contrary position on this issue. *See, e.g.*, *Reyes v. Guevara*, No. 18 C 1028 (N.D. Ill.) (Dkt. 140) (the law firms representing the Defendants in this case insisting they should get to question first because they subpoenaed the deposition first, and the law firm representing Plaintiff in this case arguing that the equities favored Plaintiff questioning first; Defendants' counsel prevailed); Group Ex. 3, *Rivera v. Guevara*, No. 1:12-cv-04428 (N.D. Ill.) (Dkt. 51 & Trans. of March. 13, 2013 Hrg.) (the law firms representing the Defendants in this case insisting they should get to question first because they subpoenaed the deposition first, Plaintiff's counsel in this case arguing that the equities favored Plaintiff questioning first; Plaintiffs' counsel prevailed); Group Ex. 2, *Walker v. Burge, et al.*, No. 21 C 4231 (N.D. Ill.) (Dkts. 222 & 223) (Defendants' law firm insisting they should get to question first

11

because they communicated an intention to take the deposition first, and Plaintiff's law firm arguing that the equities favored Plaintiff questioning first; Plaintiff's counsel prevailed). This history between counsel merely highlights two points: (1) because counsel for the Guevara plaintiffs and the Guevara defendants have argued that service should be the primary factor in deciding which party gets to question a witness first, as Plaintiff has proposed here, Plaintiff should get to question these witnesses first; and (2) even applying the equities, Plaintiff should get to question these witnesses first.

### III. Defendants' Proposals Are Not Workable.

Defendants at one point insisted that the parties simply engage in a back and forth "draft" to pick witnesses; this proposal prejudices Plaintiff and is unfair. As discussed above, such a process does not follow any of the frameworks discussed above, and instead throws them all out the window in favor of a tit-for-tat process that will inevitably result in Defendants being able to take depositions first of witnesses that Plaintiff served first, and for whom the equities strongly favor Plaintiff being able to question first. Notably, Plaintiff prioritized and moves here only with regard to three third party witnesses that he intends to call in his case in chief. They are all appropriately questioned first by him. Defendants' draft proposal would have allowed Defendants to inevitably ask questions first of witnesses critical to Plaintiff's prosecution that are out of state or are otherwise likely to be unavailable at trial, which would irredeemably prejudice Plaintiff in presenting his case to the jury.

Defendants' proposed draft also presupposes that each side would take the same number of depositions, but in these wrongful conviction cases plaintiffs almost always take more depositions because they have the burden of proof and are the ones who need to develop evidence of constitutional misconduct. There are also many categories of witnesses over whom the parties almost never have disputes: for example, defense counsel has historically agreed that plaintiffs can go first with third party officers with limited involvement in the homicide investigation, and plaintiffs have historically agreed that defendants can go first with defense attorneys and damages witnesses, for

12

example. A draft would merely create more opportunity for gamesmanship. In any event, the Guevara defendants ultimately abandoned this proposal during the parties' conferrals.

To the extent Defendants wanted to exchange lists and make trades, the Guevara plaintiffs tried that too, but it did not result in an agreement, despite the that fact that plaintiffs' final offer gave defendants four witnesses they had served and noticed first, in exchange for just two witnesses defendants had noticed (but not served) first; that offer was rejected. Looking at just this case, Plaintiff agreed to a compromise in which, if Defendants simply allowed him to go forward with the single deposition of Melloney Parker, he would let Defendants go first with the other two witnesses he had served first (Jose Tinajero and Jesus Fuentes), *as well as* the five witnesses Defendants noticed first (Thomas Kelly, Esteban Rodriguez, Margarita Casiano, Angel Serrano, Manuel Rodriguez). That is, one witness for Plaintiff, seven for Defendants. Defendants refused that compromise. They have repeatedly moved the goalposts, and ultimately rejected every compromise offered.[5]

It also bears mentioning: the approach Plaintiff has taken is measured, and allows each party to identify critical witnesses and pursue their depositions. Plaintiff did not go out and serve everyone, or insist that he should go first with every critical witness. Likewise, Plaintiff did not serve and notice these depositions minutes after the start of discovery, but weeks later, over a period of several weeks during which Defendants had every opportunity to do the same thing.[6] Plaintiff identified a few witnesses that he felt were critical to his case (and did not simply notice up others that he wanted to take, but that he could not yet locate for service), and left many other important witnesses in the case

---

[5] That offer remains on the table, and in Plaintiffs' view a fair compromise that should resolve this motion so the parties can proceed with depositions without further delay.

[6] Defendants will likely argue that several weeks passed from the time that Plaintiff served subpoenas on some of the witnesses, to the time Plaintiff issued a notice for those witnesses, in some cases resulting in the notice going out after the return date on the subpoena. This is true, but it is of no moment: Plaintiff made clear that the return dates on the subpoenas were mere placeholders, and that Plaintiff would of course work with Defendants on identifying mutually agreeable dates, as the parties have always done in these cases.

that could be served by Defendants if they chose (and indeed, Defendants immediately noticed a number of depositions as soon as it received Plaintiff's notices and proofs of service).[7]

### IV. Defendants Should Not be Permitted to Indefinitely Delay Depositions.

Plaintiff is also concerned that this dispute has become a process of endless delay. Plaintiff noticed these depositions in August 2023. When Defendants objected, Plaintiff agreed to confer but repeatedly requested that the process move expeditiously so depositions would not be delayed. Instead, the process has now dragged on for three months, as Defendants have continuously moved the goalposts during the conferral process, preventing the narrowing of disputes but ensuring additional delay. Now, Defendants insist that even when this dispute is resolved, they will not agree to dates for any depositions to proceed while various third-party subpoenas are pending. There is no basis for this sequencing of depositions after Defendants unilaterally decide they are satisfied that they have all the documents they want—particularly when Defendants have had the opportunity to pursue subpoenas for months.

"Unless the parties stipulate or the court orders otherwise for the parties' and witnesses' convenience and in the interest of justice: (A) methods of discovery may be used in any sequence; and (B) discovery by one party does not require any other party to delay its discovery." Fed. R. Civ. P. 26(d)(3). Plaintiff is of course willing to work with Defendants on scheduling, and for example Plaintiff assumes Defendants will want Plaintiff's prison file, medical records and other documents before they

---

[7] Defendants' decision to simply notice up the depositions of six witnesses who all implicated Plaintiff in the crime, to varying degrees, is problematic. Plaintiff had been actively looking for many of these witnesses for weeks and in some cases months, but had yet to locate them and so did not notice them up. But upon receiving Plaintiff's notice of witnesses served Defendants simply noticed them up. It is unclear whether Defendants are now insisting that they should get to depose them first (even though they acknowledge in correspondence that notice should not dictate). If they are, that would be contrary to every standard above, and that they have argued during the conferral process: they have not served them first, based on "witness alignment" they are hostile to Plaintiff, as Plaintiff's counsel almost always does in wrongful conviction trials he will call these witnesses in his case in chief whether they ultimately provide favorable testimony or not (for example, to demonstrate that their identifications are inherently unreliable and could only have been fabricated by Defendants). But that is not the issue before the Court on this motion.

take Plaintiff's deposition, which Plaintiff will, of course, accommodate. But there is no basis to put off the depositions of third party witnesses, including the three witnesses at issue here. This case was filed in March 2023, and the fact discovery deadline is February 23, 2024. Plaintiff has produced the entire set of post-conviction documents in his possession months ago, including the entire criminal trial record, transcripts, police reports and witness statements. The City has produced its homicide investigation files. There is no reason depositions of third parties cannot proceed. If Defendants had certain documents they wanted via third party subpoenas, they could have issued those subpoenas many months ago. Instead, Defendants continue to issue new subpoenas as recently as the last few weeks, and now insist they want answers to those subpoenas before depositions go forward. This is a recipe for endless delay. Because of this pending dispute, no depositions have yet occurred in this case. There is much to do, and we should get started now.

## CONCLUSION

For the reasons set forth above, Plaintiff requests that the Court compel Defendants to comply with the deposition subpoenas Plaintiff has served and noticed, permit Plaintiff to question those witnesses first, and promptly provide dates on which those depositions case proceed.

RESPECTFULLY SUBMITTED,

/s/ Annie Prossnitz
*Counsel for Plaintiff*

Jon Loevy
Anand Swaminathan
Steve Art
Sean Starr
Annie Prossnitz
LOEVY & LOEVY
311 N. Aberdeen
Chicago, Illinois 60607
(312) 243-5900
prossnitz@loevy.com

15

## **CERTIFICATE OF SERVICE**

I, Annie Prossnitz, an attorney, hereby certify that on December 6, 2023, I caused the foregoing motion to be filed using the Court's CM/ECF system, which effected service on all counsel of record.

/s/ Annie Prossnitz
*One of Plaintiff's Attorneys*