IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS, EASTERN DIVISION

| | | |
|---|---|---|
| John Martinez | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 23-CV-01741 |
| | ) | Hon. Thomas M. Durkin |
| Reynaldo Guevara, et al., | ) | Hon. Magistrate Sheila M. Finnegan |
| | ) | |
| Defendants. | ) | |

**THIRD PARTY RESPONDENT CCSAO'S *OPPOSED* MOTION TO QUASH SUBPOENA AND RESPONSE TO MOTION TO COMPEL**

Third-Party Cook County State's Attorney's Office ("CCSAO"), by its attorney, Kimberly M. Foxx, State's Attorney of Cook County, through her Assistant State's Attorney, David A. Adelman, pursuant to Fed. R. Civ. P. 26 and Fed. R. Civ. P. 45, brings this response to Defendants, Hector Vergara, Randy Troche, Edward Mingey, Geri Lynn Yanow, as special representative for Ernest Halverson and Joseph Mohan, and Kevin Rogers as special representative for Francis Cappitelli, ("Defendants"), motion to compel and brings this motion quash the Defendants' subpoena. In support, the Respondent CCSAO states as follows:

**BRIEFING SCHEDULE**

Pursuant to this Honorable Court's motion practice requirements, undersigned counsel conferred with Laura N. Ranum, attorney for Defendants, who indicated that CCSAO's Motion to Quash Subpoena is opposed. CCSAO and counsel for Defendants agreed that the currently set March 14, 2024 date for Defendants' reply [Docket #129] is sufficient.

1

**INTRODUCTION**

On March 21, 2023, Plaintiff John Martinez ("Plaintiff") filed a twelve-count complaint against the City of Chicago, individual City of Chicago police officers, Cook County, and an individual Cook County employee alleging that he was wrongfully prosecuted and convicted for a 1998 murder alongside co-defendants Thomas Kelly and Jose Tinajero. *See* Docket [Dkt.] 1. On August 9, 2022, the Plaintiff's murder conviction was vacated. [Dkt. 1]. On November 22, 2023, Plaintiff filed a petition for a certificate of innocence ("COI") which is pending with the next court date set for April 23, 2024. *Ex*. 1 *Plaintiff's Petition*; *Ex*. 2 *Plaintiff's Continuance Order*. The Plaintiff's criminal co-defendant Jose Tinajero filed COI petitions on February 13, 2023, with next court date of April 23, 2024 as well. *Ex.* 3 *Tinajero Petition; Ex*. 4 *Tinajero Continuance.* Co-defendant Thomas Kelley, filed a petition for post-conviction relief on November 9, 2023, that was disposed of on January 31, 2024. *Ex*. 5 *Cook County Clerk's Docket*.

On August 24, 2023, Defendants issued a subpoena upon the CCSAO. [Dkt. 128-4]. Defendants agreed to an unspecified extension. *Ex. 6 Email Dated September 14, 2023*. Notably, the CCSAO receives hundreds of document subpoenas per year. In 2023 alone the CCSAO received 346 subpoenas. The CCSAO conducted diligent inquiries into the request from September 20, 2023, until November 29, 2023, in efforts to obtain the subpoenaed documents. However, the three individual co-defendants' criminal cases, including the Plaintiff's, were ongoing in the post-conviction or COI stages.

On November 29, 2023, CCSAO informed Defendants that the investigation was ongoing and as such the CCSAO was asserting the law enforcement investigatory privilege. *Ex.7*. From December 4, 2023, to January 31, 2024, the CCSAO and the Defendants engaged in numerous discussions about production of the subpoenaed materials, throughout those conversations the

CCSAO has maintained that the information is subject to the law enforcement investigatory privilege and cannot be produced without a court order. *See* Dkt 128-7, 8, and 9. For example, on January 11, 2024, CCSAO once again asserted the law enforcement investigatory privilege due to pending *Martinez* COI and, at the time, *Tinajero* and *Kelly* post-conviction proceedings; and that Defendants did not meet the need for secrecy versus the need for access to information balancing test in *Santiago v. City of Chicago*, 2010 U.S. Dist. LEXIS 29198, at *6-*7 (*citing Lepianka v. The Village of Franklin Park*, 2004 U.S. Dist. LEXIS 5013, 2004 WL 626830, at *2 (N.D. Ill. March 26, 2004)). *See Letter to Laura M. Ranum & Kyle Christie dated January 11, 2024, attached hereto as Exhibit 8*. CCSAO further stated that the "CCSAO's need to ensure it has access to the criminal file so it can evaluate and investigate claims made by each of the criminal defendants in their post-conviction or COI proceedings outweigh any interest your clients have in the moment." and that Defendants "..could not point to any specific document you need but rather all but admitted you are fishing for information by seeking the whole file, which is being used for the PC's and COI proceedings." *Id*.

As a result of this declaration of privilege, the CCSAO requests this Court quash the Defendants' subpoena under Fed. R. Civ. P. 45.

### ARGUMENT

I. **THE CCSAO NEVER WAIVED ANY CLAIM OF PRIVILEGE.**

  **A. The CCSAO Timely Asserted Law Enforcement Investigatory Privilege.**

Defendants incorrectly apply Fed. R. Civ. P. 45, to the CCSAO assertation of privilege. CCSAO asked Defendants for an extension and Defendants readily agreed. The Defendants motion was the first time the issue of waiver was raised. Dkt. 128. The Defendants and the CCSAO

3

have been in repeated discussions since September 14, 2023. It is important to review the timeline of their relevant interactions:

1. On September 6, 2023, Defendants issued their subpoena requiring production on September 27, 2023.

2. On September 14, 2023, the CCSAO sent Defendants an acknowledgement letter which requested an extension without proposing an end date. *Ex. D to Defendants' Motion [Dkt 128-5].*

3. Later the same day, the Defendants responded with "Received. No issue with the extension. Thank you." *Ex.* 6.

4. On November 28, 2023, Defendants' counsel sent an email following up on the subpoena. Dkt. 128-7, page 11.

5. The same day, on November 28, 2023, CCSAO responded that "It looks like one or more of the cases may be on going. We are in the process of clarifying that and will let you know. *Id, p.10.*

6. On November 29, 2023, CCSAO asserted the law enforcement investigatory privilege in a letter to Defendants' counsel. Dkt 128-7, p. 2, 9,10 & *Ex.*7.

7. On December 4, 2023, the Defendants responded with an email from Mr. Kyle Christie opposing CCSAO assertion of law enforcement investigatory privilege, however there was no mention of a claim of waiver. Dkt. 128-7, p. 8,9.

8. December 14, 2023, CCSAO once again asserted the law enforcement privilege in an email response to Mr. Kyle Christie's email and cited the applicable caselaw. *Id*. at p.3.

9. December 15, 2023, attorneys held a conference call and Mr. Kyle Christie sent a detailed letter confirming the discussion and again objecting to the law enforcement investigatory privilege, however, there was no allegation of waiver. *Id.* at p.2.

This pattern continued throughout the various additional discussions between counsel until the Defendants' motion was filed. *Id*. Defendants' claim of waiver is meritless and evidenced by the fact CCSAO timely asserted the law enforcement investigatory privilege on multiple occasions.

4

That Defendants failed to claim waiver until now is merely an attempt to secure privileged information to which they are not entitled. Defendants are estopped from claiming waiver now. They have, in effect, waived their waiver argument.

**B. The CCSAO never waived any privilege claims by disclosure to the criminal defendants**.

By law, the CCSAO must provide extensive disclosures to criminal defendants. *See Brady v. Maryland, 373 U.S. 83* (1963); and *See* Ill. Sup. Ct., R 412. Yet, those disclosures are limited to exclude work product, informant identities, and matters with security risks. *Id*. These disclosures are made to the defendants due to their status as parties to the case, and to their defense counsel in their role as a representative of the accused. *Id*.

Waiver requires "disclosing privileged communications to a third party." *Medicines Co. v. Mylan Inc*., 936 F. Supp. 2d 894, 902 (N.D. Ill. 2013). In their motion to compel, the civil Defendants refer to the Plaintiff's co-defendants in the criminal case, and their respective attorneys, are "third parties." Dkt. 128. This is an improper characterization of the parties. While it is true that the that the Plaintiff's criminal co-defendants and the criminal defense attorneys are not subject to this civil lawsuit, they are the primary parties in the separate criminal cases. Therefore, no disclosure was made to third parties and no waiver could occur.

Moreover, Fed. R. Evid. 502, explicitly provides that "[w]hen the disclosure is made in a state proceeding and is not the subject of a state-court order concerning waiver, the disclosure does not operate as a waiver in a federal proceeding if the disclosure: (1) would not be a waiver under this rule if it had been made in a federal proceeding; or (2) is not a waiver under the law of the state where the disclosure occurred." *Id.* There was no waiver in the state criminal court proceedings.

Disclosure required by law does not waive privilege. Waiver requires that the disclosure be both voluntarily and knowingly. *See People v. Simpson*, 369 N.E.2d 1248, 1251 (1977) (holding "a ***voluntary revelation*** by the holder [of the privilege] of the communication, or of a material part, is a waiver" (quoting Edward W. Cleary, *McCormick's Handbook of the Law of Evidence* § 83, at 170 (2d ed. 1972) (emphasis added)). Any disclosures required by law, such as being compelled by a subpoena to produce documents, is not a voluntary waiver of the privilege. *See Am. Nat. Bank & Tr. Co. of Chicago v. Equitable Life Assur. Soc. of U.S.*, 406 F.3d 867, 877 n.5 (7th Cir. 2005) (making note that courts generally hold that when production of privileged communications is judicially compelled, compliance with the order does not waive the attorney-client privilege) (quoting Paul R. Rice, 2 *Attorney-Client Privilege in the United States* § 9:25 (2d ed. 2004)). This is distinguishable from *In re Sulfuric Acid Antitrust Litigation* where the Court held privilege was waived due to prior inadvertent disclosure of document in response to a subpoena from the U.S. government. The holding was not due to the fact that the documents had been produced via a subpoena or other lawful measure to a third party that made them discoverable, but because the defendants in that case had failed to assert a privilege at the time of inadvertent disclosure to the government and thus waived the privilege on those specific documents in question. 234 F.R.D 407, 427 (N. D. Ill. 2006).

State and federal law both require the production of evidence to criminal defendants. Ill. Sup. Ct., R. 412; *See Brady v. Maryland, 373 U.S. 83* (1963); *See also Carvajal v. Dominguez*, 542 F. 3d 561, 566 (7th Cir. 2008). Providing the Plaintiff and his criminal co-defendants with materials relevant to the criminal case, therefore, does not constitute a disclosure or waiver under state law, and accordingly does not constitute a waiver under Fed. R. Evid. 502. Consequently the CCSAO has never disclosed the requested information in a way that would waive the claim to privilege.

II.  **THE LAW ENFORCEMENT INVESTIGATORY PRIVILEGE APPLIES TO THE DEFENDANTS' REQUESTED MATERIALS.**

   **A. The CCSAO properly asserted the law enforcement privilege.**

The Defendants, quoting *Lewis v. City of Chicago* in their motion to compel, state, "[b]efore a court need consider the merits of whether the privilege applies, 'the responsible official in the [government] department [asserting the privilege] must lodge a formal claim of privilege, after actual personal consideration, specifying with particularity the information for which protection is sought, and explain why the information falls within the scope of the privilege." No. 04 C 3904, 2004 WL 2608302 at *2 (N.D. Ill. Nov. 16, 2004); *see also Pontarelli Limousine, Inc. v. Chicago*, 652 F. Supp. 1428, 1431 (N.D. Ill. 1987) (quoting *United States v. Winner*, 641 F.2d 825, 831-32 (10th Cir. 1981)). This standard comes directly from strict standard used to assert claims of executive privilege. *Ass'n for Women in Sci. v. Califano*, 185 U.S. App. D.C. 19, 566 F.2d 339, 347 (1977); *Black v. United States*, 564 F.2d 531, slip op. at 22-23, (1977).

The CCSAO letter dated from November 29, 2023, constitutes a formal assertion that follows the requirements under Rule 45 noted above. The Defendants allegation that "counsel for the CCSAO indicated that: (1) he has never reviewed the file…" is fatal to the claim of privilege is an erroneous understanding of the law. Dkt. 128. e. In *Ass'n for Women in Sci. v. Califano*, that court held that "intra-governmental communications, and most law enforcement evidentiary files, the confidential reports filed here are all in a standard format, and little, if anything, could be gained by having the [government agent] review each [document] before claiming the privilege." 185 U.S. App. D.C. 19, 566 F.2d 339, 347-48 (1977). Here, the files requested by the Defendants are extensive, and follow standard format. The same is true for the prosecutor preparing the case for trial. Counsel for the CCSAO did not have to review the file to know that there were pending

7

legal proceedings justifying the claim of law enforcement investigatory privilege. The CCSAO assertion of the privilege was procedurally valid.

### B. The CCSAO claim of the law enforcement investigatory privilege prevails on the merits.

The law enforcement investigatory privilege is recognized by Illinois and is intended to "prevent disclosure of law enforcement techniques and procedures, to preserve the confidentiality of sources, to protect witnesses and law enforcement personnel, and to safeguard the privacy of individuals involved in an investigation, and otherwise to prevent interference with an investigation." *In Re Marriage of Daniels*, 240 Ill.App.3d at 331; *Ostrowski v. Holem*, 2003 U.S. Dist. LEXIS 794 (N.D. Ill. Jan 21, 2003).).

i. Application of the balancing test weighs in favor of the CCSAO.

When the law enforcement investigatory privilege is asserted, the court "must balance the public benefit of the confidentiality of the law enforcement investigation with the need of a civil litigant to receive such information," however, this balancing starts with the scales weighed against the litigant seeking disclosure. *See Hernandez v. Logini*, 1997 U.S. Dist. LEXIS 18679 (N.D. Ill. Nov. 13, 1997); *Dellwood Farms v. Cargill, Inc.*, 128 F.3d 1122, 1125 (7th Cir. 1997); . See also *Santiago v. City of Chicago*, 2010 U.S. Dist. LEXIS 29198, at *6-*7 (*citing Lepianka v. The Village of Franklin Park*, 2004 U.S. Dist. LEXIS 5013, 2004 WL 626830, at *2 (N.D. Ill. March 26, 2004) (the need for secrecy versus need for access to information balancing test).

In civil rights suits, Illinois considers ten factors in determining the applicability of the privilege: "(1) the extent to which disclosure will thwart governmental processes by discouraging citizens from giving the government information; (2) the impact upon persons who have given information of having their identities disclosed; (3) the degree to which government self-

evaluation and consequent program improvement will be chilled by disclosure; (4) whether the information sought is factual data or evaluative summary; (5) whether the party seeking the discovery is an actual or potential defendant to any criminal proceeding either pending or reasonably likely to follow from the incident; (6) whether the police investigation has been complete; (7) whether any intradepartmental disciplinary proceedings have arisen or may arise from the investigation; (8) whether plaintiff's suit is non-frivolous and brought in good faith; (9) whether the information sought is available through other discovery or from other sources; and (10) the importance of the information sought to plaintiff's case." *Daniels*, 240 Ill.App.3d at 333-36; *see also Jones v. Brennan*, 2019 U.S. Dist. LEXIS 89306 at *8-9 (N.D. Ill, May 29, 2019); *Kampinen v. Individuals of Chicago Police Dep't*, 2002 U.S. Dist. LEXIS 2561 at *4 (N.D. Ill. Feb. 19, 2002

Here, factors one, two, four, five, and nine weigh heavily in the favor of the CCSAO. Disclosure of the criminal file before the end of an investigation has potential to frustrate cooperation between the government and the public, due to the sensitive nature of this criminal case and other similar criminal cases. This is especially the case involving multiple criminal defendants, conspiracy, and the unique difficulties of investigating and prosecuting gang related crimes of violence. The public needs to remain confident that reporting crimes and providing witness statements will not put them in harm's way of retaliation by having their identities exposed. For this same reason, factor two on the need to protect witnesses, also weighs in the CCSAO favor.

Factor four, works to protect evaluative documents, the typical contents of the document the Defendants request. Documents include evaluations and mental impressions not only by the prosecuting attorney and police offices but also other potential state agency investigators and consultants. While even without the law enforcement investigatory privilege, attorney work

9

product the evaluative work of the prosecutor, those of other law enforcement officers are not, which is why the law enforcement privilege is essential to protect their investigatory methods.

The Defendants here are police officers, not the criminal defendants. They are not the ones subject to actual or potential criminal liability in the underlying criminal files requested as factor five addresses. Two of the Defendants are deceased and cannot legally be held liable of any crimes they committed while alive. This factor, like the others, weighs in the CCSAO favor.

Most importantly, factor nine holds extraordinary weight in favor of the CCSAO. The Defendants are requesting documents related to an underlying criminal case that was investigated by themselves. The Defendants have a firsthand account of the investigation. They are named in the Plaintiff's complaint because they were police officers who had involvement in the criminal case. The Defendants themselves hold this information, and proper client communication can produce the same information that the documents requested do. Also, police reports and materials can be subpoenaed from their original source, the City of Chicago. The only thing the CCSAO can produce that other sources cannot is the mental impressions and trial preparation of the prosecutor, information that is subject to the Deliberative Process and work product doctrines. As such, the factors weigh in the CCSAOs favor and the CCSAO should not be compelled produce the privileged documents.

        ii.      <u>Case law establishes that post-trial proceedings are ongoing investigations</u>.

Defendants assert in their motion to compel that the cases cited in the CCSAO November 29, 2023, letter are distinguishable because they involved "ongoing criminal investigations that had not gone to trial" and therefore hold no weight in the CCSAO basis for asserting the law enforcement investigatory privilege. Dkt. 128-6. This is contrary to what the current case law establishes as an ongoing investigation.

10

The claim for the privilege is "somewhat stronger when law enforcement is seeking to protect ongoing investigations as contrasted with closed files…" *Santiago v. City of Chicago*, 2010 U.S. Dist. LEXIS 29198 (2010). Once it is established that the documents are related to a "bona fide, ongoing, law enforcement investigation" that implicates someone in a crime, the disclosure will not be ordered if it compromises an ongoing investigation or jeopardizes investigatory techniques. *Jabara v. Kelley*, 75 F.R.D. 475, 493 (E.D. Mich. 1977); *see also Black v. Sheraton Corp. of Am.*, 184 U.S. App. D.C. 46, 564 F.2d 531, 547 (1977) (rejecting the plaintiff's claim that the privilege did not apply due to a ten-year time lapse between the original investigation and his recently filed civil suit). Moreover, the privilege applies not only to an ongoing or closed investigation, but also when the ability to conduct future investigations may be impaired by disclosure. *Murchison-Allman v. City of New York*, 115 F. Supp. 3d 447, 448 (S.D.N.Y. 2015) quoting *Nat'l Congress for Puerto Rican Rights v. City of New York*, 194 F.R.D. 88, 95 (S.D.N.Y. 2000). This line of reasoning stems from *Borchers v. Commercial Union Assurance Co.*, in which the court acknowledged both that even if an investigation was closed, the plaintiff would not necessarily be entitled to the documents in his own criminal investigation, and such disclosure could impact law enforcement's ability to have cooperative informants in the future. 874 F. Supp. 78, 80 (S.D.N.Y. 1995).

Post conviction proceedings, like petitions for COIs, are not distinguishable from pretrial and trial proceedings in regard to what is considered an ongoing criminal investigation. In Illinois, COIs indicate that "the petitioner was innocent of all offenses for which he or she was incarcerated." 735 ILCS 5/2-702(b). In order to obtain a COI, the petitioner must prove several factors, namely, that they are innocent of the offenses, or their acts or omissions do not constitute a felony or misdemeanor, and their own conduct did not voluntarily cause or bring about the

conviction in question. 735 ILCS 5/2-702(g)(3-4). During these post-conviction proceedings, the prosecutor, a law enforcement agent, investigate the veracity of a criminal defendant's allegations, must make decisions about how to move forward from what evidence, if any, to put on in opposition to allegations made COIs, whether to retry the petitioner, and whether the petitioner is subject or should be subject to criminal liability for their actions under a different law.

Here, Plaintiff's conviction was vacated on January 17, 2023. *Ex.*1. At the time the complaint was filed, the CCSAO declined to prosecute the Plaintiff further. *Ex.*1. Vacating a conviction or declining to prosecute does not mean the convicted was innocent or without criminal liability, in fact, that is exactly why the Plaintiff filed for a COI. Plaintiff made allegation in his COI petition including that he is innocent, eyewitness testimony is incorrect, and that he was coerced into confessing along with his co-defendants. *Ex.*1. These allegations need to be investigated by the prosecuting attorney. During that investigation, the Plaintiff may be exposed to the possibility of criminal liability, as decisions not to prosecute are not with prejudice and can always be reconsidered. Particularly relevant here is Plaintiff's alleged coerced confession, as voluntariness is an essential element of the claim for a COI that has received attention for appeal courts lately. *See People v. Washington*, 2023 IL 127952, ¶ 62 (holding "[v]oluntariness is to be determined on a case-by-case basis considering the totality of the circumstances"). Additionally, criminal co-defendant Jose Tinajero has also filed a COI petition, in which evidence and defenses present could shift the blame onto Plaintiff. Hence, the COI constitutes an ongoing investigation, bolstering the CCSAO claim of law enforcement investigatory privilege.

**III.     THIS COURT IS REQUIRED TO QUASH THE SUBPOENA UNDER FEDERAL RULE OF CIVIL PROCEDURE 45.**

The CCSAO moves to quash the Fed. R. Civ. P. 45 subpoena issued by the Defendants for the following reasons (1) the request "requires disclosure of privileged or other protected matter." (2) the request is unduly burdensome to the CCSAO, and (3) the request is unreasonably cumulative. Fed. R. Civ. P. 45(d)(3)(A).

The CCSAO asserted the law enforcement investigatory privilege basis for this privilege in its November 29, 2023, letter. Dkt 128-6; *Ex.*7. This claim is valid and meritorious as demonstrated above. Thus, this Court must quash the subpoena requesting privileged information.

Likewise, production would unduly burden the CCSAO's ongoing investigation into the Plaintiff's petition a COI. The mandate of Fed. R. Civ. P. 45(c)(1) is that a "party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." *Id.* The subpoena requesting documents in an ongoing criminal case is damaging to the CCSAO investigation of the Plaintiff's COI petition. *Martinez, Tinajero,* and *Kelly's* cases are intertwined with one another as they all involve the same murder. Thus, either file directly interferes with the *Martinez* and *Tinajero* COI investigations not only by depriving the prosecuting attorney of the file temporarily while it is processed but hampering future investigation such as chilling cooperation from the public, including witnesses. *See Daniels*, 240 Ill.App.3d at 333-36. At conclusion of the COI proceedings, the cases will no longer be ongoing, and information requested can be disclosed without interference. It is reasonable for the Defendants to wait for the conclusion of the proceedings to reissue the subpoena rather than move to force compulsion of the privileged documents. So, once again, this Court must quash the subpoena.

Finally, the Fed. R. Civ. P. 26(b)(2)(C)(i) requires that, "the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that: the

discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive." Fed. R. Civ. P. 26(b)(2)(C)(i). Although the CCSAO is likely in possession of investigatory records like police reports and notes, Defendants can also to obtain these investigatory records from the City of Chicago, to meet their stated needs of "refreshing witnesses' recollections" and determining "which officers interviewed…interviewed which witnesses." Dkt. 128. Therefore, the request is unreasonably cumulative, and this Court is permitted to quash the subpoena.

## CONCLUSION

For the reasons set forth above, the CCSAO respectfully requests that this Court grant the CCSAO's motion to quash the Defendants' subpoena and deny their Motion for Rule to Show Cause.

Respectfully submitted,

KIMBERLY M FOXX
State's Attorney of Cook County

By: /s/ *David A. Adelman*
David A. Adelman
Assistant State's Attorney
Cook County State's Attorney's Office
Civil Actions Bureau
500 Richard J. Daley Center
Chicago, IL 60602
(312) 603-3151
David.adelman@cookcountysao.org