**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | | |
|---|---|---|
| JOHN MARTINEZ<br><br>Plaintiff,<br><br>v.<br><br>REYNALDO GUEVARA, et al.,<br><br>Defendants. | ) | Case No. 23-cv-1741<br><br>Hon. Judge Georgia N. Alexakis<br><br>JURY DEMAND |
| JOSE TINAJERO,<br><br>Plaintiff,<br><br>v.<br><br>CITY OF CHICAGO, et al.,<br><br>Defendants. | ) | Case No. 24-cv-1598<br><br>Hon. Judge Georgia N. Alexakis<br><br>JURY DEMAND |
| THOMAS KELLY,<br><br>Plaintiff,<br><br>v.<br><br>REYNALDO GUEVARA, et al.,<br><br>Defendants. | ) | Case No. 24-cv-5354<br><br>Hon. Judge Georgia N. Alexakis<br><br>JURY DEMAND |

# DEFENDANTS TROCHE AND YANOW'S MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR SUMMARY JUDGMENT

Date: August 14, 2026

Respectfully submitted,

/s/ Jeffrey C. Grossich

JEFFREY C. GROSSICH, Atty. No. 6316511
*One of the Attorneys for Defendants Troche and Yanow, as Special Representative for Halvorsen, deceased, and Mohan, deceased*

James G. Sotos
Laura M. Ranum
Josh M Engquist
Kyle T. Christie
Jeffrey C. Grossich
Madeline Vanschelven
THE SOTOS LAW FIRM, P.C.
141 W. Jackson Blvd., #1240A
Chicago, IL 60604
(630) 735-3300
jgrossich@jsotoslaw.com

# TABLE OF CONTENTS

**Page**


INTRODUCTION ..... 1

STATEMENT OF FACTS ..... 2

LEGAL STANDARD ..... 5

PLAINTIFFS' CURRENTLY OPERATIVE CLAIMS ..... 6

ARGUMENT ..... 10

I. All the Claims Against Mohan Fail for Lack of Personal Involvement ..... 10

II. Plaintiffs' Fifth Amendment Coerced Confession Claims Fail Against Certain Movants for Lack of Personal Involvement ..... 12

a. Martinez's coerced confession claim fails against Halvorsen for lack of personal involvement. ..... 12

b. Tinajero's coerced confession claim fails against Halvorsen and Troche for lack of personal involvement. ..... 12

c. Kelly's coerced confession claim fails against Troche and Halvorsen for lack of personal involvement. ..... 13

III. Plaintiffs' Fourteenth Amendment Fabrication of Evidence Claims Fail ..... 14

a. There is no evidence that the identifications, handwritten statement, or testimony of eyewitness Melloney Parker were fabricated. ..... 15

b. There is no evidence that any Movant had personal involvement in Parker's in-court identification of Kelly. ..... 17

c. There is no evidence that the identifications or testimony of eyewitnesses Jesus Fuentes and Esteban Rodriguez were fabricated. ..... 17

d. There is no evidence that witness Margarita Casiano's statements, identifications, or testimony were fabricated. ..... 18

e. Troche is entitled to summary judgment on Plaintiffs' fabrication of evidence claims for lack of personal involvement. ..... 19

## TABLE OF CONTENTS
## -CONTINUED-


f. Plaintiffs' "cross-claims" for the alleged fabrication of another Plaintiff's inculpatory statements fail on the merits or alternatively, qualified immunity applies. ................19

g. Martinez's and Kelly's claims that Movants fabricated police reports likewise fail. ..20

IV. Plaintiffs' *Brady* Suppression Claims Fail ........................................................................ 20

a. Tinajero's *Brady* claim is abandoned. ........................................................................ 21

b. There is no evidence that notes of certain interviews were suppressed or withheld.21

c. There is no viable claim that Movants suppressed unlawful tactics they allegedly used on Parker, Fuentes, Rodriguez, or Casiano. ..................................................................22

d. The *Brady* claims mentioned in Tiderington's expert report are barred and, alternatively, fail on the merits. ..........................................................................................25

e. Plaintiffs have not specifically identified any other evidence that was allegedly suppressed. ...........................................................................................................................26

f. Because the culpability standard necessary for a civil Brady claim remains in flux, Defendants are qualifiedly immune from Brady liability. ............................................27

V. Martinez's and Kelly's Undeveloped Destruction of Evidence Claim Must Be Dismissed...28

VI. Summary Judgment Is Warranted on Plaintiffs' Failure to Intervene Claims.........................29

VII. Plaintiffs' Federal & State Conspiracy Claims Also Fail........................................................ 31

a. Absence of underlying tort violations requires dismissal of conspiracy claims....... 31

b. There is no evidence to support Plaintiffs' conspiracy claims. ................................ 31

c. Plaintiffs' federal conspiracy claims fail as there are no private actor defendants. ...... .................................................................................................................................... 32

VIII. Martinez's and Kelly's State Law Willful & Wanton Conduct Claims Fail........................... 33

IX. Movants Adopt Certain Arguments Made by Co-Defendant Guevara ................................ 35

CONCLUSION ............................................................................................................................ 35

## TABLE OF AUTHORITIES

**Cases:** **Page**

*Alvarado v. Hudak,* No. 14 CV 9641, 2015 WL 4978683 (N.D. Ill. Aug. 20, 2015) ........ 23

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242 (1986) ........ 5

*Arizona v. Youngblood,* 488 U.S. 51 (1988) ........ 27, 28

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ........ 30

*Aska v. Yingling,* No. 3:23-cv-50004, 2026 WL 179545 (N.D. Ill. Jan. 23, 2026) ........ 24, 27

*Beaman v. Freesmeyer*, 776 F.3d 500 (7th Cir. 2015) ........ 31

*Blazek v. ADT Sec. LLC*, No. 19-cv-01822, 2023 WL 2186008 (N.D. Ill., Feb. 23, 2023) ........ 12, 13, 14

*Brady v. Maryland*, 373 U.S. 83 (1963) ........ 20

*Brown v. City of Chicago*, 633 F. Supp. 3d 1122 (N.D. Ill. 2022) ........ 14, 20

*Byrd v. Brishke*, 466 F.2d 6 (7th Cir. 1972) ........ 30, 31

*Caparelli v. Town of Merrillville,* No. 2:24-CV-67-GSL-APR, 2025 WL 1147748 (N.D. Ind. Mar. 18, 2025) ........ 32

*Carmody v. Bd. of Tr. of Univ. of Ill.*, 893 F.3d 397 (7th Cir. 2018) ........ 22

*Chavez v. Ill. State Police*, 251 F.3d 612 (7th Cir. 2001) ........ 29

*Chavez v. Martinez*, 538 U.S. 760 (2003) ........ 12

*Chi. Title Ins. Co. v. Sinikovic*, 125 F. Supp. 3d 769 (N.D. Ill. 2015) ........ 31, 32

*Colbert v. City of Chicago,* 851 F.3d 649 (7th Cir. 2017) ........ 11, 12, 13, 14, 19

*Coleman v. City of Peoria*, 925 F.3d 336 (7th Cir. 2019) ........ 14, 15, 18, 19, 20

*Cooney v. Casady,* 735 F.3d 514 (7th Cir. 2013) ........ 32

*Cruz v. Guevara*, No. 23 CV 4268, 2026 WL 1998702 (ND. Ill. July 10, 2026) ........ 23

*de Lima Silva v. Dep't of Corrs.*, 917 F.3d 546 (7th Cir. 2019) ........ 11

**TABLE OF AUTHORITIES**
**-CONTINUED-**

**Cases:** **Page**

*Dukes v. Washburn*, No. 21-cv-03672, 2026 WL 579205 (N.D. Ill. Mar. 2, 2026) .................................. 12

*Fairley v. Andrews*, 578 F.3d 518 (7th Cir. 2009) .................................. 32

*Fields v. City of Chicago*, No. 10 C 1168, 2014 WL 477394
(N.D. Ill. Feb. 6, 2014) .................................. 29

*Fields v. Wharrie,* 740 F.3d 1107 (7th Cir. 2014) .................................. 15, 20

*Findlay v. Lendermon*, 722 F.3d 895 (7th Cir. 2013) .................................. 30

*Fletcher v. Bogucki*, No. 20-cv-04768, 2021 WL 4477968 (N.D. Ill. Sept. 30, 2021) .................................. 35

*Flowers v. Kia Motors Fin.*, 105 F.4th 939 (7th Cir. 2024) .................................. 14

*Floyd ex rel. Floyd v. Rockford Park Dist.*, 355 Ill. App. 3d 695 (2d Dist. 2005) .................................. 34

*Gauger v. Hendle*, 349 F.3d 354 (7th Cir. 2003) .................................. 24

*Gill v. City of Milwaukee*, 850 F.3d 335 (7th Cir. 2017) .................................. 12, 31

*Gonzalez-Loza v. Downey,* No. 19 C 3046, 2023 WL 6198787 (N.D. Ill. Sept. 22, 2023) .................................. 34

*Goodman v. Nat'l Sec. Agency, Inc.,* 621 F.3d 651 (7th Cir. 2010) .................................. 5

*Grayson v. City of Aurora*, 157 F. Supp. 3d 725 (N.D. Ill. 2016) .................................. 31

*Heidelberg v. Manias*, No. 18-cv-01161-SLD-JEH, 2024 WL 1316206 (C.D. Ill. Mar. 27, 2024) .................................. 25

*Hernandez v. City of Peoria*, No. 19 CV 01153, 2022 WL 22624877 (C.D. Ill. Aug. 5, 2022) .................................. 32

*Hill v. City of Chicago*, No. 06 C 6772, 2009 WL 174994 (N.D. Ill. Jan. 26, 2009) .................................. 22

*Iglesias v. Guevara*, No. 19-cv-06508, 2025 WL 3171611 (N.D. Ill. Nov. 13, 2025)
.................................. 16, 17, 18

*Jakes v. Boudreau*, No. 19 CV 2204, 2023 WL 3585629
(N.D. Ill. May 22, 2023) .................................. 10, 11, 12, 13, 15

*James Wilson Assoc.*, 965 F.2d 160 (7th Cir. 1992) .................................. 26

**TABLE OF AUTHORITIES**
**-CONTINUED-**

**Cases:** **Page**

*Jane Doe-3 v. McLean Cnty. Unit Dist. No. 5 Bd. of Dirs.*, 2012 IL 112479 .......... 33, 34

*Johnson v. Guevara*, No. 20 C 4156, 2025 WL 903813 (N.D. Ill. Mar. 24, 2025) .......... 23, 34

*Johnson v. Rimmer,* 936 F.3d 695 (7th Cir. 2019) .......... 11

*Jones v. York*, 34 F.4th 550 (7th Cir. 2022) .......... 28, 29

*Kelly v. Mun. Cts. of Marion Cnty., Ind.,* 97 F.3d 902, 909 (7th Cir. 1996) .......... 10, 17

*Kidwell v. Eisenhauer,* 679 F.3d 957 (7th Cir. 2012) .......... 5

*Killian v. U.S.,* 368 U.S. 979 (1961) .......... 28

*Knight v. Wiseman*, 590 F.3d 458 (7th Cir. 2009) .......... 11

*Krywin v. Chi. Transit Auth.,* 938 N.E.2d 440 (Ill. 2010) .......... 33

*Lavite v. Dunstan*, 932 F.3d 1020 (7th Cir. 2019) .......... 16

*Lewis v. Mills*, 677 F.3d 324 (7th Cir. 2012) .......... 32

*Loubser v. Thacker*, 440 F.3d 439 (7th Cir. 2006) .......... 27

*Lozman v. Putnam, 884 N.E.2d* 756 (Ill. App. Ct. 2008). .......... 32

*Lurry v. City of Joliet,* No. 20-cv-4545, 2025 WL 1331792 (N.D. Ill. May 7, 2025) .......... 33

*MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, 994 F.3d 869 (7th Cir. 2021) .......... 16

*McClure v. Owens Corning Fiberglas Corp.,* 720 N.E.2d 242 (1999) .......... 31, 32

*Mims v. City of Chicago,* 155 F.4th 970 (7th Cir. 2025) .......... 27

*Monell v. N.Y. City of Department of Social Services,* 436 U.S. 658 (1978) .......... 30, 31

*Moran v. Calumet City*, 54 F.4th 483 (7th Cir. 2022) .......... 14, 19, 20 21, 22, 25, 26, 28

*Mullenix v. Luna*, 577 U.S. 7 (2012) .......... 20, 30

*Munson v. Gaetz,* 673 F.3d 630 (7th Cir. 2012) .......... 10, 17

**TABLE OF AUTHORITIES**
**-CONTINUED-**

**Cases:** **Page**

*Myvett v. Heerdt,* No. 12 C 09464, 2015 WL 12745087 (N.D. Ill. May 28, 2015) ....................................23

*Mwangangi v. Nielsen*, 48 F.4th 816 (7th Cir. 2022) ....................................30

*Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379 (4th Cir. 2014) ....................................27

*Palmer v. City of Decatur*, No. 17-CV-3268, 2021 WL 7707939 (C.D. Ill. Sept. 20, 2021) ....16, 17, 18, 19

*Patrick v. City of Chicago*, 974 F.3d 824 (7th Cir. 2020) ....................................15, 19, 20

*Pearson v. Callahan,* 555 U.S. 223 (2009) .................................... 24, 27

*Pennington v. Flora Cmty. Unit Sch. Dist.* No. 35, No. 3:20-cv-11, 2023 WL 348320 (S.D. Ill. Jan. 20, 2023) ....................................33

*Pepper v. Vill. of Oak Park*, 430 F.3d 805 (7th Cir. 2005) .................................... 10, 14

*Petty v. City of Chicago*, 754 F.3d 416 (7th Cir. 2014 .................................... 21, 24

*Phillips v. City of Chicago,* No. 14 C 9372, 2015 WL 5675529 (N.D. Ill. Sept. 24, 2015) ....................................23

*Rasho v. Elyea*, 856 F.3d 469 (7th Cir. 2017) ....................................11

*Reichle v. Howards*, 566 U.S. 658 (2012) .................................... 27, 33

*Roberts v. Broski*, 186 F.3d 990 (7th Cir. 1999) ....................................5, 17, 18, 24, 27, 28

*Romito v. City of Chicago*, 2019 IL App (1st) 181152 ....................................34

*Rosado v. Gonzalez,* 832 F.3d 714(7th Cir. 2016) ....................................29

*Salgado by Salgado v. Gen. Motors Corp.*, 150 F.3d 725 (7th Cir. 1998 ....................................25

*Saunders-El v. Rohde* 778 F.3d 556 (7th Cir. 2015) ....................................22, 23, 24, 26

*Savory v. Andrews,* No. 24-2947, slip op. (7th Cir. Aug. 14, 2026) ....................................19

*Smith v. Gomez,* 550 F.3d 613 (7th Cir. 2008). ....................................31

*Swetlik v. Crawford,* 738 F.3d 818 (7th Cir. 2013) ....................................5

## TABLE OF AUTHORITIES
## -CONTINUED-

**Cases:** **Page**

*Tri-Plex Tech. Servs., Ltd. v. Jon-Don, LLC,* 2024 IL 129183 ....... 31

*Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2014) ....... 32

*Turner v. Hirschbach Motor Lines*, 854 F.3d 926(7th Cir. 2017) ....... 31

*Villasana v. Wilhoit,* 368 F.3d 976 (8th Cir. 2004) ....... 27

*Whitaker v. Dempsey*, 144 F.4th 908 (7th Cir. 2025) ....... 16

*White v. Pauly*, 580 U.S. 73 (2017) ....... 19, 20

*Wilson v. Layne*, 526 U.S. 603 (1999) ....... 24, 27

*Yang v. Hardin*, 37 F.3d 282 (7th Cir. 1994) ....... 29

*Ziarko v. Soo Line R.R. Co.,* 641 N.E.2d 402 (Ill. 1994) ....... 33

**Statutes:** **Page**

42 U.S.C. § 1983 ....... *passim*

Fed. Rule 37(c )(1) ....... 25

Fed. R. Evid. Rule 703 ....... 26

Defendants Randy Troche and Geri Lynn Yanow, as Special Representative for Ernest Halvorsen, deceased, and Joseph Mohan, deceased, (collectively, "Movants"), by counsel, submit this Memorandum of Law in Support of their Partial Motion for Summary Judgment.

**INTRODUCTION**

On October 12, 1998, Daniel Garcia was brutally beaten and left bleeding and unconscious in an alley near the intersections of Armitage and Whipple in Chicago. Garcia later died from his wounds. Plaintiffs John Martinez, Jose Tinajero, and Thomas Kelly (members of the Courtland and Whipple set of the Latin Kings street gang) were identified by three eyewitnesses—Melloney Parker, Jesus Fuentes, and Esteban Rodriguez—as having participated in the beating. None of these witnesses have ever recanted. Plaintiffs later provided inculpatory statements to police which they now claim were false and coerced—although Kelly and Martinez still admit they were present at the scene at the time of Garcia's beating. Specifically, Kelly claims he walked past the beating while on the way to his parked car; Martinez admits he actually walked up to Garcia while he bled on the ground and "nudged" him with his foot.

Plaintiffs were arrested, charged, and found guilty of first-degree murder. In 2023 and 2024, Plaintiffs obtained postconviction relief after alleging a pattern of misconduct against Defendant Reynaldo Guevara. As a result, Plaintiffs now sue the City of Chicago, Guevara, and Movants for various claims arising from their arrests and prosecutions for Garcia's murder. The § 1983 claims against Movants are for coerced (Fifth Amendment) and fabricated confessions (Fourteenth Amendment), fabrication of witness statements and identifications (Fourteenth Amendment), suppression of evidence (Fourteenth Amendment), malicious prosecution (Fourth Amendment), failure to intervene, and conspiracy. Plaintiffs also allege state law claims against Movants for malicious prosecution, intentional infliction of emotional distress (IIED), willful and wanton conduct, and common law conspiracy. Movants request summary judgment on all of Plaintiffs' claims against them

except Martinez's Fifth Amendment coerced confession claim against Troche, which is Count II of Martinez's First Amended Complaint.

## STATEMENT OF FACTS[1]

On October 12, 1998, Daniel Garcia was beaten in an alley so badly that he entered a coma for nearly two months until, on December 10, he succumbed to his injuries and the case was reclassified as a homicide. (SOF ¶¶ 19–20, 23.) The area where the beating took place—near Armitage and Whipple—was a well-known drug spot within Latin Kings street gang territory. (SOF ¶ 21–22.)

Garcia had been dropped off near the alley by his friends, Jesus Fuentes and Esteban Rodriguez. (SOF ¶¶ 7, 9.) After Garcia got out of the van, Fuentes and Rodriguez circled the block twice before they stopped again and saw five or six young men in the alley who looked like they were kicking and shoving each other. (SOF ¶¶ 10–11.) Fuentes and Rodriguez then circled the block a third time before stopping and getting out of the van. (SOF ¶ 12.) The pair walked into the alley and found Garcia lying on the ground, bleeding and unconscious. (SOF ¶13.) Fuentes and Rodriguez tried to bring Garcia back to the van, but fled when they heard someone coming. (SOF ¶ 14.) Fuentes and Rodriguez later viewed live lineups and identified Martinez, Kelly, and Tinajero as three of the men who they had seen in the alley that night before they found Garcia. (SOF ¶¶ 73–74, 77, 87–88.)

On October 12, 1998, Melloney Parker lived in a third-floor apartment at 1945 North Whipple. (SOF ¶ 15) In the early morning hours, Parker was awakened by a noise and looked out her living room window where she saw the beating and called 911. (SOF ¶¶ 16–17) Chicago police responded to the scene just before 2:00 AM, and found Garcia bleeding, motionless, and unresponsive. (SOF ¶ 18.) Police were met at the scene by Rubi Garcia, who informed them that the unconscious person

---

[1] Defendants submitted a joint statement of material facts pursuant to Local Rules 56.1(a)(2) and 56.1(d). Movants hereby incorporate that joint statement in full.

was her brother, Daniel. (SOF ¶ 20.) Rubi Garcia later told detectives that when she went to the scene that night, she saw "gang bangers" from the area who bothered her. (SOF ¶ 21.)

Margarita Casiano used to live approximately one and a half blocks away from the area of Whipple and Armitage and used to buy drugs in the alley. (SOF ¶ 26.) Casiano reported to police that she was familiar with four individuals who hung out in the area of Whipple and Armitage who she knew as "Snoopy," "Johnny," "Toy," and "Rabbit." (SOF ¶ 27.) Casiano told police that in October 1998, she went to the alley at Armitage and Whipple and saw "Snoopy," "Johnny," "Toy," and "Rabbit" in the alley, and they were reportedly laughing about having beat up a Mexican dude and left him in the alley. (SOF ¶ 28.) Detectives showed Casiano photos of Tinajero, Martinez, and Kelly, and she identified them as "Toy," "Johnny," and "Snoopy," respectively. (SOF ¶¶ 29–31.)

Detectives also learned that Melloney Parker lived at 1945 N. Whipple and was the individual who called the police to report the October 12, 1998 incident. (SOF ¶ 32.) Detective Guevara showed Parker a six-person black and white mugshot photo array, and Parker identified a photo of Tinajero and said he was one of the individuals she saw in the alley during the beating. (SOF ¶ 34.)

Plaintiffs were arrested and live lineups were conducted. (SOF ¶¶ 37, 50, 62, 73–77, 87–89.) Both Esteban Rodruguez and Jesus Fuentes identified Plaintiffs Martinez, Kelly and Tinajero as the offenders. (SOF ¶¶ 74, 87–89.) Parker also viewed a lineup and identified Martinez and Tinajero as the offenders. (SOF ¶ 74.)

Parker subsequently gave a handwritten, signed statement to ASA Jake Rubenstein. (SOF ¶ 78.) According to the statement, Parker saw a Hispanic person, identified by photograph as Daniel Garcia, walk down the alley and began talking to Tinajero, who she also identified by photograph. Parker then heard Tinajero yell, "Where's my money," and "We're Latin Kings, motherfucker," and then Tinajero hit Garcia and the rest of the men present joined in, kicking and hitting him. (SOF ¶ 79.) Parker indicated in her statement that she identified Tinajero and Martinez as the individuals who punched

and kicked Garcia, and identified Tinajero as the individual who shouted, "Where's my money?" at Garcia. (SOF ¶ 80.) Parker affirmed in her deposition that her statement and identifications were truthful, and she has never recanted. (SOF ¶ 84.) Instead, she has insisted that "no one told her who to pick." (SOF ¶ 85.) Neither Esteban nor Fuentes have ever recanted and neither were available to give a deposition in this case.

After their arrests, Plaintiffs each provided inculpatory statements that they now claim were false and coerced. (SOF ¶¶ 49, 57, 59, 64, 70–72.) Notably, Martinez and Kelly both admit to this day that they were at the crime scene, and Martinez admits that he touched Garcia with his foot while he lay on the ground, but then left without seeking any help or calling 911. (SOF ¶¶ 60, 72.)

On February 9, 1999, following the identifications of Rodriguez and Parker and Parker's statement, ASA Rubenstein approved charges for first-degree murder against Plaintiffs Martinez, Tinajero, and Kelly. (SOF ¶ 86.) In March 1999, Tinajero, Martinez, and Kelly were indicted by a grand jury for first-degree murder, aggravated battery, and robbery. (SOF ¶ 89.)

Plaintiffs' cases went to trial in July 2001. (SOF ¶ 100.) Although all three Plaintiffs were tried in a single proceeding, the trials were severed. (SOF ¶¶ 100–101.) Tinajero elected for a jury trial, while Martinez and Kelly elected for a bench trial. (SOF ¶ 101.) Thus, combined proceedings were held with certain evidence presented to both the jury and judge, then the jury excused, and additional evidence presented only to the judge; specifically, Tinajero's confession was introduced to the jury (he had the jury trial), while Martinez's and Kelly's confessions were introduced solely to the judge (they each had bench trials). (SOF ¶¶ 101, 117–119.) Parker, Fuentes, and Rodriguez also testified and affirmed their previous identifications of Plaintiffs as Garcia's killers. (SOF ¶¶ 102–107, 109–110.) Parker additionally identified Kelly as an offender at trial. (SOF ¶ 111.) Casiano made in-court identification of Tinajero, Martinez, and Kelly as individuals she knew as "Toy," "Johnny," and "Snoopy," respectively, who hung out around Whipple and Armitage and sold her cocaine in the alley off Whipple

and Armitage on October 13 or 14, 1998. (SOF ¶ 108.) There remains no evidence that any of these witnesses ever recanted their statements to police, their identifications of Plaintiffs, or their criminal trial testimony.

Plaintiffs' inculpatory statements were introduced at trial through the testimony of assistant state's attorneys. (SOF ¶¶ 117–119.) Martinez also testified on his own behalf and confirmed that he and Tinajero were in the alley on the night of the beating and that he "nudged" Garcia with his foot. (SOF ¶¶ 114–115.) All three Plaintiffs were convicted. (SOF ¶¶ 121–122.)

In 2023, Martinez's conviction was vacated and the Cook County State's Attorney's Office (CCSAO) dropped all charges. (SOF ¶ 126.) Tinajero and Kelly had their convictions vacated in 2024, and the charges against them were also dropped. (SOF ¶ 128.)

**LEGAL STANDARD**

Summary judgment must enter if there is no genuine material fact dispute and Movants are entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). An issue of fact exists if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). If Plaintiffs cannot establish an element of their claim, Movants are entitled to judgment. *Kidwell v. Eisenhauer*, 679 F.3d 957, 964 (7th Cir. 2012). While the Court must construe the facts in a light most favorable to Plaintiffs and draw reasonable inferences in their favor, *Anderson*, 477 U.S. at 255, "that duty does not extend to drawing inferences that are supported only by speculation or conjecture." *Swetlik v. Crawford*, 738 F.3d 818, 829 (7th Cir. 2013) (internal quotation marks omitted). Summary judgment is the "put up or shut up moment in litigation." *Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010) (internal quotation marks omitted). For any issue on which Plaintiffs bear the burden of proof, they must cite *evidence* permitting a jury to find in their favor. *Roberts v. Broski*, 186 F.3d 990, 995 (7th Cir. 1999).

## PLAINTIFFS' CURRENTLY OPERATIVE CLAIMS

For the Court's ease, below is a chart of the pending claims against the Officer Defendants[2]:

| Plaintiff | Count | Claim | Remaining Defendants | Section(s) of Memorandum |
|---|---|---|---|---|
| Martinez | **Count I** (Fabrication of Evidence) | Melloney Parker's identifications, handwritten statements, and testimony were fabricated. | Guevara, Halvorsen, Troche, and Mohan | See, Secs. I, III(a), III(b), III(e) |
| Martinez | **Count I** (Fabrication of Evidence) | Jesus Fuentes and Esteban Rodriguez's identifications and testimony were fabricated. | Guevara, Halvorsen, Troche, and Mohan | See, Secs. I, III(c), III(e) |
| Martinez | **Count I** (Fabrication of Evidence) | Margarita Casiano's identifications and testimony were fabricated. | Guevara, Halvorsen, Troche, and Mohan. | See, Secs. I, III(d), III(e) |
| Martinez | **Count I** (Fabrication of Evidence) | Officer Defendants fabricated Kelly's and Tinajero's confessions | Guevara, Halvorsen, Troche, and Mohan | See, Secs. I, III(f) |
| Martinez | **Count I** (Fabrication of Evidence) | Officer Defendants fabricated police reports. | Guevara, Halvorsen, Troche, and Mohan | See, Secs. I, III(g) |
| Martinez | **Count I** (*Brady*) | Notes of interviews with Esteban Rodriguez, Margarita Casiano, and Melloney Parker were suppressed. | Guevara, Halvorsen, Troche, and Mohan | See, Secs. I, IV(b), IV(f) |
| Martinez | **Count I** (*Brady*) | Officer Defendants suppressed the unlawful tactics they used on | Guevara, Halvorsen, Troche, and Mohan | See, Secs. I, IV(c), IV(f) |

[2] Plaintiffs previously dismissed Defendants Mingey, Cappatelli, and Vergara. (*Martinez* Dkt. 228, 231, 316; *Kelly* Dkt. 98, 100, 180; *Tinajero* Dkt. 127, 128, 192, 194.) They have also withdrawn their due process claim based on a theory of any defendant employing suggestive identification procedures. (*Martinez* Dkt. 312 at ¶ 10(d); *Kelly* Dkt. 177 at ¶ 10(d); *Tinajero* Dkt. 189 at ¶ 10(d). ). This chart also does not include Plaintiffs' pending claims against the Defendant City of Chicago. All three Plaintiffs allege § 1983 municipal liability (*Monell*) claims against the City, and Tinajero alleges a state law malicious prosecution claim against the City. (*Martinez* Dkt. 70 at ¶¶ 167-178; *Kelly* Dkt 47 at ¶¶ 171-182; *Tinajero* Dkt. 62 at ¶¶ 54, 55.)

| | | | | |
|---|---|---|---|---|
| | | Parker, Fuentes, Rodriguez, and Casiano. | | |
| Martinez | **Count I** (*Brady*) | Suppression of evidence alleged in Thomas Tiderington's expert report. | Guevara, Halvorsen, Troche, and Mohan | See, Secs. I, IV(d), IV(f) |
| Martinez | **Count I** (*Brady*) | Suppression of other evidence not specifically identified. | Guevara, Halvorsen, Troche, and Mohan | See, Secs. I, IV(e), IV(f) |
| Martinez | **Count I** (*Brady*) | Officer Defendants destroyed unspecified evidence | Guevara, Halvorsen, Troche, and Mohan | See, Secs. I, V |
| Martinez | **Count II** (Fifth Amendment) | Officer Defendants coerced Martinez's confession. | Guevara, Halvorsen, Troche, and Mohan | See, Secs. I, II(a) |
| Martinez | **Count II** (Fourteenth Amendment) | Officer Defendants fabricated Martinez's confession | Guevara, Halvorsen, Troche, and Mohan | See, Guevara Memo of Law, Secs. IV, V |
| Martinez | **Count III** | Fourth and Fourteenth Amendment Malicious Prosecution and Unlawful Detention | Guevara, Halvorsen, Troche, and Mohan | See, Guevara Memo of Law, Secs. VII |
| Martinez | **Count IV** | § 1983 Failure to Intervene | Guevara, Halvorsen, Troche, and Mohan. | See, Secs. I, VI |
| Martinez | **Count V** | § 1983 Conspiracy | Guevara, Halvorsen, Troche, and Mohan | See, Secs. I, VII |
| Martinez | **Count VII** | State Law Malicious Prosecution | Guevara, Halvorsen, Troche, and Mohan | See, Guevara Memo of Law, Secs. VII.A. |
| Martinez | **Count VIII** | State Law IIED | Guevara, Halvorsen, Troche, and Mohan | See, Guevara Memo of Law, Secs. VIII |
| Martinez | **Count IX** | State Law Willful and Wanton Conduct | Guevara, Halvorsen, Troche, and Mohan | See, Secs. I, VIII |

| | | | | |
|---|---|---|---|---|
| Martinez | **Count X** | State Law Civil Conspiracy | Guevara, Halvorsen, Troche, and Mohan | See, Secs. I, VII(a), VII(b) |
| | | | | |
| Kelly | **Count I** (Fabrication of Evidence) | Melloney Parker's identifications, handwritten statements, and testimony were fabricated. | Guevara, Halvorsen, Troche, and Mohan | See, Secs. I, III(a), III(b), III(e) |
| Kelly | **Count I** (Fabrication of Evidence) | Jesus Fuentes and Esteban Rodriguez's identifications and testimony were fabricated. | Guevara, Halvorsen, Troche and Mohan | See, Secs. I, III(c), III(e) |
| Kelly | **Count I** (Fabrication of Evidence) | Margarita Casiano's identifications and testimony were fabricated. | Guevara, Halvorsen, Troche, and Mohan. | See, Secs. I, III(d), III(e) |
| Kelly | **Count I** (Fabrication of Evidence) | Officer Defendants fabricated Martinez's and Tinajero's confessions. | Guevara, Halvorsen, Troche, and Mohan | See, Secs. I, III(f) |
| Kelly | **Count I** (Fabrication of Evidence) | Officer Defendants fabricated police reports. | Guevara, Halvorsen, Troche, and Mohan | See, Secs. I, III(g) |
| Kelly | **Count I** (*Brady*) | Notes of interviews with Esteban Rodriguez, Margarita Casiano, and Melloney Parker were suppressed. | Guevara, Halvorsen, Troche, and Mohan | See, Secs. I, IV(b), IV(f) |
| Kelly | **Count I** (*Brady*) | Officer Defendants suppressed the unlawful tactics they used on Parker, Fuentes, Rodriguez, and Casiano. | Guevara, Halvorsen, Troche, and Mohan | See, Secs. I, IV(c), IV(f) |
| Kelly | **Count I** (*Brady*) | Suppression of evidence alleged in Thomas Tiderington's expert report. | Guevara, Halvorsen, Troche, and Mohan | See, Secs. I, IV(d), IV(f) |

| | | | | |
|---|---|---|---|---|
| Kelly | **Count I** (*Brady*) | Suppression of other evidence not specifically identified. | Guevara, Halvorsen, Troche, and Mohan | See, Secs. I, IV(e), IV(f) |
| Kelly | **Coun I** (*Brady*) | Officer Defendants destroyed unspecified evidence | Guevara, Halvorsen, Troche, and Mohan | See, Secs. I, V |
| Kelly | **Count II** (Fifth Amendment) | Officer Defendants coerced Kelly's confession. | Guevara, Halvorsen, Troche, and Mohan | See, Secs. I, II(c) |
| Kelly | **Count II** (Fourteenth Amendment) | Officer Defendants' fabricated Kelly's confession. | Guevara, Halvorsen, Troche, and Mohan | See, Guevara Memo of Law, Secs. V, VI |
| Kelly | **Count III** | Fourth and Fourteenth Amendment Malicious Prosecution and Unlawful Detention | Guevara, Halvorsen, Troche, and Mohan | See, Guevara Memo of Law, Secs. VII.A.–B. |
| Kelly | **Count IV** | § 1983 Failure to Intervene | Guevara, Halvorsen, Troche, and Mohan. | See, Secs. I, VI |
| Kelly | **Count V** | § 1983 Conspiracy | Guevara, Halvorsen, Troche, and Mohan | See, Secs. I, VII |
| Kelly | **Count VII** | State Law Malicious Prosecution | Guevara, Halvorsen, Troche, and Mohan | See, Guevara Memo of Law, Secs. VII.A. |
| Kelly | **Count VIII** | State Law IIED | Guevara, Halvorsen, Troche, and Mohan | See, Guevara Memo of Law, Secs. VIII |
| Kelly | **Count IX** | State Law Willful and Wanton Conduct | Guevara, Halvorsen, Troche, and Mohan | See, Secs. I, VIII |
| Kelly | **Count X** | State Law Civil Conspiracy | Guevara, Halvorsen, Troche, and Mohan | See, Secs. I, VII(a), VII(b) |
| | | | | |
| Tinajero | **Fourth Amendment Claim** | Malicious Prosecution and Unlawful Detention | Guevara, Halvorsen, Troche, and Mohan | See, Guevara Memo of Law, Secs. VII.A.–B. |

| | | | | |
|---|---|---|---|---|
| Tinajero | **Fifth Amendment Claim** | Officer Defendants coerced Tinajero's confession | Guevara, Halvorsen, Troche, and Mohan | See, Secs. I, II(b) |
| Tinajero | **Fourteenth Amendment Claim** (Fabrication of Evidence) | Melloney Parker's identifications, handwritten statements, and testimony were fabricated. | Guevara, Halvorsen, Troche, and Mohan | See, Secs. I, III(a), III(b), III(e) |
| Tinajero | **Fourteenth Amendment Claim** (Fabrication of Evidence) | Jesus Fuentes and Esteban Rodriguez's identifications and testimony were fabricated. | Guevara, Halvorsen, Troche, and Mohan | See, Secs. I, III(c), III(e) |
| Tinajero | **Fourteenth Amendment Claim** (Fabrication of Evidence) | Margarita Casiano's identifications and testimony were fabricated. | Guevara, Halvorsen, Troche, and Mohan. | See, Secs. I, III(d), III(e) |
| Tinajero | **Fourteenth Amendment Claim** (Fabrication of Evidence) | Officer Defendants fabricated Martinez's and Kelly's confessions. | Guevara, Halvorsen, Troche, and Mohan | See, Secs. I, III(f) |

## ARGUMENT

### I. All the Claims Against Mohan Fail for Lack of Personal Involvement

Mohan is entitled to summary judgment because he was not personally involved in any of Plaintiffs' alleged constitutional violations. Personal involvement is a prerequisite for liability under § 1983. *Munson v. Gaetz*, 673 F.3d 630, 637 (7th Cir. 2012); *Kelly v. Mun. Cts. of Marion Cnty., Ind.*, 97 F.3d 902, 909 (7th Cir. 1996). For liability to attach, a defendant must have caused or participated in—i.e., have had direct personal involvement—in the alleged constitutional deprivation. *Pepper v. Vill. of Oak Park*, 430 F.3d 805, 810 (7th Cir. 2005).

To survive summary judgment and "show individual liability for any constitutional violation under § 1983, a plaintiff needs to show," with evidence, "that each defendant was personally involved in the unlawful conduct." *Jakes v. Boudreau*, No. 19 CV 2204, 2023 WL 3585629, at *9 (N.D. Ill. May 22,

2023) (citing *Johnson v. Rimmer*, 936 F.3d 695, 710–11 (7th Cir. 2019)); *see also Colbert v. City of Chicago*, 851 F.3d 649, 657 (7th Cir. 2017) (plaintiff failed to establish personal involvement where he was unable to identify four named defendants out of ten potential officers who participated in allegedly illegal search). "[T]o hold an officer individually responsible, [Plaintiffs] must prove that the officer (1) participated directly in the alleged violation; (2) knew about the conduct; (3) facilitated the conduct; or (4) approved, condoned, or turned a blind eye to it." *Jakes*, 2023 WL 3585629, at *9 (citing *Rasho v. Elyea*, 856 F.3d 469, 478 (7th Cir. 2017)).

First, Mohan's mere participation in the investigation is insufficient. *de Lima Silva v. Dep't of Corrs.*, 917 F.3d 546, 564 (7th Cir. 2019) (no personal involvement absent evidence that defendants were involved in decision to fire plaintiff despite participation in investigation). An officer cannot be held liable for a constitutional violation that is committed by another officer without the sued officer's knowledge. *Knight v. Wiseman*, 590 F.3d 458, 463 (7th Cir. 2009) (official "must know about the conduct and facilitate it, approve it, condone it, or turn a blind eye").

Second, there is no evidence that Mohan was involved in any alleged constitutional violation. On February 7, 1999, at 5:00 AM, Mohan and Troche arrested Tinajero and transported him to Area 5. (SOF ¶ 37.) At the station, Mohan was present when Troche asked Tinajero if he was involved in a fight at Armitage and Whipple. (SOF ¶ 39.) Mohan also went along when Troche drove Tinajero to look at the crime scene. (SOF ¶ 40.) Once back at Area 5 after going to the scene, Troche placed Tinajero in an interview room. (SOF ¶¶ 41–42.) Mohan then ended his shift, left the police station, and had no further involvement in the case. (SOF ¶ 43.) Tinajero did not confess until later that afternoon, and he does not allege that Mohan was present or had any involvement in questioning him after 10:00 AM on February 7. (SOF ¶¶ 45–49.) Mohan did not interview or interact with any of the witnesses, including Parker, Rodriguez, Fuentes, or Casiano. (SOF ¶¶ 24–36, 73–88, 134.) Mohan did

not interview Kelly or Martinez and there is no evidence that Mohan ever even interacted at all with Plaintiffs Martinez and Kelly. (SOF ¶¶ 50–72, 134.)

Plaintiffs' inability to provide evidence of Mohan's personal involvement in any of the alleged unconstitutional conduct entitles him to summary judgment. *See, Gill v. City of Milwaukee*, 850 F.3d 335, 344 (7th Cir. 2017) (dismissal warranted where there was no allegation or plausible inference that officer knew about or was personally involved in the specific misconduct).

## II. Plaintiffs' Fifth Amendment Coerced Confession Claims Fail Against Certain Movants for Lack of Personal Involvement

Plaintiffs allege that Defendants coerced their confessions in violation of the Fifth Amendment. To prove a Fifth Amendment claim, Plaintiffs must show the "coercion of [an] involuntary statement" that was "used against [them] at [their] trials." *Dukes v. Washburn*, No. 21-cv-03672, 2026 WL 579205, at *9 (N.D. Ill. Mar. 2, 2026) (citing *Chavez v. Martinez*, 538 U.S. 760, 770 (2003)). And, as with any § 1983 claim, a plaintiff alleging coerced confession "needs to show that each defendant was personally involved in the unlawful conduct." *Jakes*, 2023 WL 3585629, at *9.

### a. Martinez's coerced confession claim fails against Halvorsen for lack of personal involvement.

Martinez's coerced confession claim must be dismissed as to Halvorsen for lack of personal involvement. Martinez testified that only Troche and Cook County Assistant State's Attorney (ASA) Rubinstein were present for his confession. (SOF ¶ 55–56.) As there is no evidence that Halvorsen was present or had any involvement, (SOF ¶¶ 50–55, 135), he is entitled to summary judgment on Martinez's coerced confession claim. *Colbert*, 851 F.3d at 657.

### b. Tinajero's coerced confession claim fails against Halvorsen and Troche for lack of personal involvement.

Tinajero's coerced confession claim against Halvorsen and Troche must also be dismissed for lack of personal involvement. First, Tinajero admits that Halvorsen was not involved in Tinajero's confession. (*See* SOF ¶¶ 37–49.) This admission alone is dispositive. *See, e.g., Blazek v. ADT Sec. LLC*,

No. 19-cv-01822, 2023 WL 2186008, at *2 (N.D. Ill., Feb. 23 2023)("The Court also will not consider Blazek's denials wherein Blazek seeks to defeat summary judgment by contradicting his own deposition testimony"). Halvorsen must therefore be dismissed from Tinajero's coerced confession claim. *Colbert*, 851 F.3d at 657.

As to Troche, he and Mohan arrested Tinajero at 5:00 AM on February 7, and transported him to Area 5. (SOF ¶¶ 37–38.) Troche questioned Tinajero once they were at the police station and then drove with Tinajero to the crime scene at Armitage and Whipple. (SOF ¶¶ 39–40, 44.) During that time, Troche asked Tinajero whether he was involved in a fight at Armitage and Whipple and Tinajero claimed that he could not recall the incident. (SOF ¶¶ 39–40.) Once they got back to Area 5, Troche placed Tinajero in an interview room. (SOF ¶¶ 41–42.) Troche then finished his shift and left the police station. (SOF ¶ 43.)

Troche had no further interactions with Tinajero, and he was not present at the police station when Tinajero confessed five and a half hours later. (SOF ¶¶ 43, 46–48.) Tinajero does not claim Troche was involved in his confession or used any coercive tactics while questioning him earlier in the day—and there is no evidence of such. (SOF ¶¶ 49, 136.) Troche is thus also entitled to summary judgment on Tinajero's coerced confession claim. *Colbert*, 851 F.3d at 657; *see also Jakes*, 2023 WL 3585629 at *13 (officer defendant who participated in the plaintiff's arrest was not personally involved in the subsequent coerced confession because he never questioned the plaintiff about his role in the murders).

**c. Kelly's coerced confession claim fails against Troche and Halvorsen for lack of personal involvement.**

Likewise, Kelly's coerced confession claim against Troche must be dismissed for lack of personal involvement. There is no evidence that Troche had anything to do with Kelly's questioning or confession, and Kelly himself has no recollection of ever interacting with Troche. (SOF ¶¶ 67–69, 137.) Troche is thus entitled to dismissal. *Colbert*, 851 F.3d at 657.

Additionally, Kelly not only failed to marshal sufficient evidence to prove a coerced confession claim against Halvorsen, but also effectively admitted that the evidence demonstrates Halvorsen did not coerce Kelly's confession. Neither the police reports nor the testimony of the other officers reflects Halvorsen's involvement in obtaining Kelly's confession. (SOF ¶¶ 64, 66.) At his deposition, Kelly testified that Halvorsen ***might*** have been present during some of Kelly's questioning by Detective Guevara, but Kelly was not sure. (SOF ¶ 66.) Speculation and conjecture do not amount to ***evidence*** that can defeat summary judgment. *Flowers v. Kia Motors Fin.*, 105 F.4th 939, 946 (7th Cir. 2024). Just as important, when asked if Halvorsen had committed any misconduct while Kelly was at the police station, Kelly said, "No." (SOF ¶ 66.)

Thus, there is no competent evidence that Halvorsen was even present for any of Kelly's interview. And even if such evidence existed, Kelly himself has denied that Halvorsen engaged in any coercive tactics, an admission that is inescapable at summary judgment. *See, Blazek*, 2023 WL 2186008, at *2 ("The Court also will not consider Blazek's denials wherein Blazek seeks to defeat summary judgment by contradicting his own deposition testimony"). Both independently, and taken as a whole, these two facts are dispositive.

Kelly has not adduced evidence sufficient to support a Fifth Amendment claim against Halvorsen, entitling him to summary judgment. *Colbert*, 851 F.3d at 657; *Pepper*, 430 F.3d at 810.

## III. Plaintiffs' Fourteenth Amendment Fabrication of Evidence Claims Fail

An "evidence-fabrication claim has four elements: (1) the defendant knowingly fabricated evidence against the plaintiff, (2) the evidence was used at his criminal trial, (3) the evidence was material, and (4) the plaintiff was damaged as a result." *Brown v. City of Chicago*, 633 F. Supp. 3d 1122, 1156 (N.D. Ill. 2022). This requires Plaintiffs to "prove that a police officer manufactured false evidence against [them]," which was later "introduced at the trial." *Moran v. Calumet City*, 54 F.4th 483, 498–99 (7th Cir. 2022) (citation and internal quotation marks omitted). "This is a high bar to clear,"

requiring that the officer "knew—with certainty—[that the evidence] was false." *Coleman v. City of Peoria*, 925 F.3d 336, 344 (7th Cir. 2019). "Fabricated [evidence] is made up, always false, and known to be false by the officer." *Jakes*, 2023 WL 3585629, at *9 (citing *Fields v. Wharrie*, 740 F.3d 1107, 1110, 1112 (7th Cir. 2014)).

Further, the evidence must have been material to Plaintiffs' conviction, as the very "essence of a due-process evidence-fabrication claim is that the accused was convicted and imprisoned based on knowingly falsified evidence." *Patrick v. City of Chicago*, 974 F.3d 824, 835 (7th Cir. 2020). It is "[u]sing false evidence to convict [that] violates a defendant's right to a fair trial." *Coleman*, 925 F.3d at 344; *see also* 7th Circuit Pattern Jury Instruction 7.14 (Plaintiffs must prove that "knowingly fabricated evidence was introduced against [them]").

**a. There is no evidence that the identifications, handwritten statement, or testimony of eyewitness Melloney Parker were fabricated.**

Melloney Parker lived in a third-floor apartment directly across the street from the alley where Garcia was beaten. (SOF ¶ 15.) She witnessed the attack from her apartment window and called the police. (SOF ¶ 16–17, 32.) Parker told the officers that she saw five to six white Hispanic males in the alley with the victim; she also stated that she recognized one of the individuals—who she heard yell, "Where's my money?"—as a "gang banger" who regularly hung out on Whipple. (SOF ¶¶ 32, 79–81.) Per Parker, that individual then began punching the victim, and the others joined in. (SOF ¶¶ 32, 79–81.)

In January 1999, Parker identified Tinajero by photograph as the individual who yelled and punched the victim. (SOF ¶ 34.) In February, Parker identified Tinajero and Martinez out of a live lineup as two of the offenders who were beating the victim. (SOF ¶¶ 73–74, 77.) That same day, Parker then provided a handwritten statement to ASA Rubinstein, in which she identified Tinajero and Martinez as two of the individuals who punched and kicked the victim, and Tinajero as the individual who shouted, "Where's my money?" (SOF ¶¶ 78–81.) On July 12, 2001, Parker testified at Plaintiffs'

combined trials, where she affirmed that the contents of her handwritten statement and made in-court identifications of Martinez and Kelly as two of the individuals who she observed on Whipple before the beating. (SOF ¶¶ 109, 111, 113.) Parker also affirmed her earlier lineup identifications of Martinez and Tinajero and her earlier photo identification of Tinajero as being individuals whom she saw in the alley that night. (SOF ¶ 110.)

Parker has never recanted her identifications, including in this case, and has never accused any police officer of threatening her, promising her anything in exchange for the identifications, or otherwise telling her who to pick. (SOF ¶¶ 84–86, 133.) This is direct, uncontradicted evidence, from the very witness against whom Plaintiffs seek a contrary inference. "Direct evidence is evidence which, if believed by the trier of fact, will prove the particular fact in question without reliance upon inference or presumption." *Lavite v. Dunstan*, 932 F.3d 1020, 1031 (7th Cir. 2019) (citation modified).

Per the Seventh Circuit, Plaintiffs cannot seek speculative inferences that refute direct evidence. *Whitaker v. Dempsey*, 144 F.4th 908, 920 (7th Cir. 2025). In *Whitaker*, like here, the plaintiff had "not presented any evidence contradicting the [witness's] sworn statement," so the court held the contrary inference desired by the plaintiff was not permitted. *Id.* Speculation is all Plaintiff has. "An inference is not reasonable if it is directly contradicted by direct evidence provided at the summary judgment stage." *MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, 994 F.3d 869, 876 (7th Cir. 2021) (citation modified).

Against this backdrop, Plaintiffs cannot overcome sworn testimony from Parker that her identifications, statement, and testimony were not fabricated. Plaintiffs' fabrication claim concerning Parker fails as a matter of law. *See Iglesias v. City of Chicago*, No. 19-cv-06508, 2025 WL 3171611, at *10 (N.D. Ill. Nov. 13, 2025) (no fabrication claim where plaintiff "presented no evidence to meaningfully counter [two witnesses'] consistent testimony that Defendants never told them to identify [the plaintiff]"); *Palmer v. City of Decatur*, No. 17-CV-3268, 2021 WL 7707939, at *31 (C.D. Ill. Sept. 20,

2021) (no fabrication where witness confirmed trial testimony was truthful and not manufactured by officers).

**b. There is no evidence that any Movant had personal involvement in Parker's in-court identification of Kelly.**

Despite the fact that there is no evidence that any of Parker's identifications were false, let alone manufactured, Movants are entitled to summary judgment on the claim that they fabricated Parker's in-court identification of Kelly during the criminal trial. The movants in this case never documented an identification of Plaintiff Kelly by Parker prior to trial. As such, her subsequent identification of Kelly in court as an offender was unrelated to any identification procedures used by Defendants. There is not a shred of evidence that any movant had anything to do with Parker's identification of Kelly in court, further warranting summary judgment with regard to his claim. *See*, *Munson,* 673 F.3d at 637; *Kelly*, 97 F.3d at 909 (Personal involvement is a prerequisite for liability under § 1983).

**c. There is no evidence that the identifications or testimony of eyewitnesses Jesus Fuentes and Esteban Rodriguez were fabricated.**

Jesus Fuentes and Esteban Rodriguez were with Garcia—their friend—on the night he was beaten. (SOF ¶¶ 7, 36.) The group was reportedly going to buy beer when Fuentes and Rodriguez dropped Garcia off near Albany and Armitage. (SOF ¶ 9, 36.) When they returned, Garcia was lying on the ground in the alley. (SOF ¶¶ 10–13, 36.) Fuentes and Rodriguez later identified all three Plaintiffs in live lineups. (SOF ¶¶ 73–75, 77, 87–88.) Both Fuentes and Rodriguez subsequently testified at Plaintiffs' July 2001 trial, during which they again identified all three Plaintiffs as being present in the alley at Armitage and Whipple at the time of Garcia's beating and reaffirmed the lineup identifications they made at Area 5. (SOF ¶¶ 102–107.)

Plaintiffs' trial is the last time that anyone has heard from Fuentes or Rodriguez. Plaintiffs bear the ultimate burden of proof on this issue, and they have adduced no evidence that would permit a jury to find in their favor. *Roberts*, 186 F.3d at 995. Because Plaintiffs cannot show either that the

witnesses' identifications were false, and that officers knowingly manufactured testimony from them, Defendants are entitled to summary judgment on the fabrication claims related to Fuentes' and Rodriguez's identifications and testimony. *Coleman*, 925 F.3d at 344; *Iglesias*, 2025 WL 3171611, at *10; *Palmer*, 2021 WL 7707939, at *31.

**d. There is no evidence that witness Margarita Casiano's statements, identifications, or testimony were fabricated.**

In December 1998, Halvorsen and Guevara were investigating an unrelated shooting when they interviewed Margarita Casiano. (SOF ¶ 26.) During that interview, Casiano reportedly told them that in October 1998, she bought crack cocaine in the alley at Whipple and Armitage from four Latin Kings—she identified them as "Toy," "Johnny," "Rabbit," and "Snoopy." (SOF ¶ 27.) Guevara and Halvorsen later showed photos of Tinajero, Martinez, and Kelly to Casiano, and she confirmed that they were photos of "Toy," "Johnny," and "Snoopy," respectively. (SOF ¶¶ 29–31.)

Consistent with the police reports in this case, Casiano testified at Plaintiffs' July 2001 trial that on October 13 or 14, 1998, she saw "Johnny," "Toy," and "Snoopy" speaking in an alley near Armitage and Whipple, that she later communicated these names to detectives, and that she later identified Tinajero as "Toy" and Kelly as "Snoopy" from pictures shown to her by police as the individuals who she saw in the alley. (SOF ¶ 108.) The criminal court barred Casiano from testifying about Plaintiffs' alleged statements to her that they beat up a Mexican in an alley because, *inter alia*, such testimony would be hearsay. (SOF ¶ 96.)

That is the last time that Casiano—who is now deceased—provided testimony in this case. (SOF ¶ 129.) Like Fuentes and Rodriguez, Plaintiff has nothing more than speculation that her 2001 trial testimony was in any way false, let alone manufactured by any defendant. Again, Plaintiffs bear the ultimate burden of proof on this issue, and they have not identified any evidence that would permit a jury to find in their favor. *Roberts*, 186 F.3d at 995. As such, the fabrication claim relating to Casiano

must be dismissed. *Coleman*, 925 F.3d at 344; *Iglesias*, 2025 WL 3171611, at *10; *Palmer*, 2021 WL 7707939, at *31.

**e. Troche is entitled to summary judgment on Plaintiffs' fabrication of evidence claims for lack of personal involvement.**

While Defendant Officers have already demonstrated that the unrebutted record entitles them to summary judgment with regard to the claims that they fabricated witness identifications and testimony, Troche is additionally entitled to summary judgment because there is no evidence he ever spoke to or interacted with Casiano, Parker, or Rodriguez. Without evidence that Troche was involved with gathering evidence from these witnesses, a jury could certainly not find that he gathered knowingly false evidence. Troche is thus also entitled to summary judgment on Plaintiffs' evidence fabrication claims related to these witnesses for lack of personal involvement. *Colbert*, 851 F.3d at 657.

**f. Plaintiffs' "cross-claims" for the alleged fabrication of another Plaintiff's inculpatory statements fail on the merits or alternatively, qualified immunity applies.**

Finally, the "cross-claims" of each Plaintiff claiming *another* Plaintiff's inculpatory statements were fabricated—e.g., Martinez's claim that his co-Plaintiffs' statements were fabricated, as opposed to his claim that his own statement was fabricated, and so on for the other Plaintiffs' like claims—fail because the trials were severed and each Plaintiff's respective statement was only introduced against him, not his co-defendants turned co-plaintiffs. (SOF ¶¶ 100–101, 117–119.) Therefore, for each Plaintiff, the confessions of his two co-Plaintiffs were not "used at" his trial "to obtain a conviction [of] the accused," requiring dismissal of those theories of liability. *Patrick*, 974 F.3d at 834; *Moran*, 54 F.4th at 499; *Savory v. Andrews*, No. 24-2947, slip op. at 19-20 (7th Cir. Aug. 14, 2026).

Alternatively, for these fabrication "cross-claims," to the extent the Court finds it is unclear whether the "used at trial" element is satisfied under these circumstance, Defendants are qualifiedly immune. Plaintiffs bear the burden of identifying "clearly established law [that] must be particularized to the facts of the[ir] case." *White v. Pauly*, 580 U.S. 73, 79 (2017) (per curiam) (citation

and internal quotation marks omitted). Here, that means Plaintiffs must identify authority predating July 2001 (Plaintiffs' trial date) placing "beyond debate" the notion that a criminal defendant's due process rights are violated when his co-defendant's allegedly fabricated confession is presented in a separate, severed manner—either outside the presence of the jury or subject to the trial judge's express ruling that the statement would not be considered against him. *Mullenix v. Luna*, 577 U.S. 7, 12 (2012) (per curiam) (citations and internal quotation marks omitted). No such authority exists, precluding Plaintiffs from carrying their burden, and requiring the entry of qualified immunity.

**g. Martinez's and Kelly's claims that Movants fabricated police reports likewise fail.**

In their responses to contention interrogatories, Martinez and Kelly allege that Movants "fabricated other evidence in order to connect Plaintiff[s] to the crimes, including…false police reports documenting Defendants' false case against Plaintiff[s]." (SOF ¶¶ 130–131.) This claim must fail because none of the police reports in this case were used against Martinez or Kelly at trial. (SOF ¶ 120.) *See, Patrick*, 974 F.3d at 835 (requiring use of fabricated evidence at trial); *Brown*, 633 F. Supp. 3d at 1159–60 (same). If the allegedly fabricated evidence is not used at trial, then there is no harm "and without a harm there is…no tort." *Fields*, 740 F.3d at 1114.

## IV. Plaintiffs' *Brady* Suppression Claims Fail

Under *Brady v. Maryland*, 373 U.S. 83 (1963), "[p]olice officers must provide exculpatory and/or impeachment evidence to prosecuting attorneys." *Coleman*, 925 F.3d at 349. To prevail on a civil claim against the police for failing to disclose such evidence, a plaintiff must prove: (1) the evidence was favorable to his defense; (2) the officer intentionally—or at least recklessly—concealed evidence; and (3) prejudice ensued because the evidence was material. *Moran*, 54 F.4th at 492; *Holloway v. City of Milwaukee*, 43 F.4th 760, 768 (7th Cir. 2022)

Suppression occurs only when the evidence "was not otherwise available to the defendant through the exercise of reasonable diligence." *Brown*, 633 F. Supp. 3d at 1163. Evidence is only

"material if there is a reasonable probability that the jury's verdict would have been different if the evidence had been presented." *Id.* "[P]olice officers discharge their *Brady* duty by turning over exculpatory evidence to the prosecutor," *Moran*, 54 F.4th at 492 (citations and internal quotation marks omitted). Evidence is not suppressed if a criminal defendant or his counsel knew of it. *Petty v. City of Chicago*, 754 F.3d 416, 423–24 (7th Cir. 2014).

**a. Tinajero's *Brady* claim is barred.**

As an initial matter, Tinajero utterly fails to allege a *Brady* claim. While Tinajero's Amended Complaint alleges he was "deprived of rights secured by the…Fourteenth Amendment[ ]," it does not specifically allege that any evidence was withheld or suppressed. (*See generally*, *Tinajero* Dkt. 62, Amended Complaint.) Additionally, in answer to contention interrogatories asking him to identify all evidence that Defendants withheld, destroyed, and/or suppressed, Tinajero states that certain evidence was "fabricated," but does not identify any evidence that was withheld, destroyed, or suppressed. (SOF ¶ 132.) If Tinajero ever had a *Brady* claim, he abandoned it when he failed to amend his complaint or identify it in his answers to discovery. *See, Moran*, 54 F.4th at 497 ("it would prejudice the defendants if they had to contend with allegations at summary judgment that Moran did not disclose during discovery").

**b. There is no evidence that notes of certain interviews were suppressed or withheld.**

Martinez and Kelly contend that Defendants either failed to contemporaneously document certain witness interviews or suppressed or destroyed the contemporaneous reports of those interviews. In their responses to contention interrogatories Martinez and Kelly allege that there is no contemporaneous documentation of: 1) Defendant Guevara's December 1998 interview with Esteban Rodriguez, 2) Guevara and Halvorsen's December 1998 interview with Margarita Casiano, and 3) Defendant Guevara's January 24, 1999 interview with Melloney Parker. (SOF ¶ 130–131.)

Critically, all these interviews were documented in police reports. (SOF ¶¶ 25–28, 32–36.) Martinez and Kelly do not deny that these reports were produced to them and their defense attorneys, eliminating any potential *Brady* violation based on this already-disclosed information. *Moran*, 54 F.4th at 492, 496.

Instead, Plaintiffs merely speculate that in addition to those reports, there are also interview notes which have been suppressed. There is ***no evidence*** that any contemporaneous notes of those interactions were ever prepared, (SOF ¶ 140), and "*Brady* does not require the creation of exculpatory evidence." *Saunders-El v. Rohde*, 778 F.3d 556, 562 (7th Cir. 2015). Nor can "mere speculation" that these notes "may have existed…be the basis for this *Brady* claim." *Hill v. City of Chicago,* No. 06 C 6772, 2009 WL 174994, at *4 (N.D. Ill. Jan. 26, 2009). "[I]nferences…supported by only speculation or conjecture will not defeat" summary judgment. *Carmody v. Bd. of Tr. of Univ. of Ill.*, 893 F.3d 397, 401 (7th Cir. 2018) (internal quotation marks omitted). The claim thus fails at the starting gate as there is nothing in the record indicating that the allegedly suppressed evidence even *existed* in the first place. And even if they did *hypothetically* exist, without evidence that the notes contained material information that was not in the disclosed police reports, Movants are entitled to summary judgment. Plaintiff has no evidence that any material information was suppressed by any movant.

**c. There is no viable claim that Movants suppressed unlawful tactics they allegedly used on Parker, Fuentes, Rodriguez, or Casiano.**

First, Plaintiffs' effort to recast a fabrication claim as a *Brady* claim is barred in the Seventh Circuit. The claim that Defendants withheld evidence of their own alleged misconduct is contrary to *Saunders-El*, which held that "*Brady* does not require the creation of exculpatory evidence, nor does it compel police officers to accurately disclose the circumstances of their investigations to the prosecution." 778 F.3d at 562. Plaintiffs, like the plaintiff whose *Brady* claim failed in *Saunders-El*, "seek[ ] to charge the officers with a *Brady* violation for keeping quiet about their wrongdoing, not

for failing to disclose any existing piece of *evidence* to the prosecution." *Id.* (emphasis in original). The Seventh Circuit flatly bars this effort, rejecting the notion that a plaintiff can successfully "charge the officers with a *Brady* violation for keeping quiet about their [alleged] wrongdoing." *Id.*

Northern District courts follow this dictate rigorously. *See, Phillips v. City of Chicago,* No. 14 C 9372, 2015 WL 5675529, at *5–6 (N.D. Ill. Sept. 24, 2015) (officers' nondisclosure of their treatment of the plaintiffs' criminal co-defendants and witnesses did not violate *Brady*); *Alvarado v. Hudak*, No. 14 CV 9641, 2015 WL 4978683, at *3 (N.D. Ill. Aug. 20, 2015) (officers' silence following alleged fabrication of evidence did not violate *Brady*); *Myvett v. Heerdt*, No. 12 C 09464, 2015 WL 12745087, at *6 (N.D. Ill. May 28, 2015) (rejecting *Brady* claim where plaintiff failed to identify any evidence that was withheld from him and instead claimed that defendants withheld their fabrication of witnesses' statements).

Just last month, this Court relied on *Saunders-El* to reject a plaintiff's claim that officers had suppressed evidence of their own misconduct. *Cruz v. Guevara*, No. 23 CV 4268, 2026 WL 1998702, at *19 (ND. Ill. July 10, 2026) (Alexakis, J.). The Court explained that *Saunders-El* is not "limited to false confession cases." *Id.* Rather, "its rule is broader," as "courts in this District have applied the reasoning of *Saunders-El* to cases that do not concern false confessions." *Id.* (citing *Johnson v. Guevara*, No. 20 C 4156, 2025 WL 903813, at *27 (N.D. Ill. Mar. 24, 2025) (plaintiff had "no colorable *Brady* claim to the extent that he asserts that the Individual Defendants should have affirmatively disclosed their fabrications" of witness identifications); *Myvett*, 2015 WL 12745087, at *6).

The same logic applies here. Even had Defendants suppressed evidence of their own misconduct (they did not) in obtaining eyewitness identifications and Plaintiffs' confessions, those actions may give rise to fabrication claims—not, according to *Saunders-El* and its progeny, a *Brady* claim. The suppression claim fails, as a result.

Second, as explained *supra* at §III.a.–d., there is no evidence that Defendants used any unlawful tactics against Parker, Fuentes, Rodriguez, or Casiano. Those witnesses never recanted or claimed to be coerced by police. Since no unlawful tactics were used on these witnesses, no such evidence could have been suppressed, further precluding Plaintiffs from identifying evidence that would permit a jury to find in their favor and requiring the claims' dismissal. *Roberts*, 186 F.3d at 995.

Third, to the extent Plaintiffs claim that Defendants suppressed the tactics they used to obtain Plaintiffs' "false" statements fails because the evidence was not suppressed. Plaintiffs' presence during each of their own interviews and confessions necessarily bars any claim that the alleged tactics used against them were suppressed. *See, Gauger v. Hendle*, 349 F.3d 354, 360 (7th Cir. 2003). However, to the extent that Martinez claims the tactics used against Kelly and Tinajero were suppressed from him, or that Kelly claims the tactics used against Martinez and Tinajero were suppressed from him, those claims also fail. Tinajero filed a motion to suppress and testified at a hearing on that motion regarding his interactions with police. (SOF ¶ 93–94.) Likewise, Kelly filed a motion to suppress that detailed his interactions with police, (SOF ¶ 92), and Martinez testified at the underlying criminal trial about his interactions with police. (SOF ¶ 114.) Thus, the subject evidence was not suppressed because it was made known to all Plaintiffs during their underlying criminal proceedings. *Petty*, 754 F.3d at 423–24.

Alternatively, if this Court were to deviate from *Saunders-El* and hold that Movants had a *Brady* obligation to disclose their tactics, any such obligation was not clearly established in 2001, entitling movants to qualified immunity because 'if judges…disagree on a constitutional question, it is unfair to subject police to money damages for picking the losing side of the controversy.'" *Pearson v. Callahan*, 555 U.S. 223, 245 (2009) (quoting *Wilson v. Layne*, 526 U.S. 603, 618 (1999)); *see also, Aska v. Yingling*, No. 3:23-cv-50004, 2026 WL 179545, at *13 (N.D. Ill. Jan. 23, 2026) ('If appellate judges

sitting in quiet chambers can't agree on the law, why should an officer know what law is clearly established…?")

**d. The *Brady* claims mentioned in Tiderington's expert report are barred and, alternatively, fail on the merits.**

Plaintiffs attempt to shoehorn in additional, undisclosed *Brady* claims in the report of their police practices expert, Thomas Tiderington. (SOF ¶ 144.) For example, Tiderington writes that the following documents in the Chicago Police Department's investigative file for the Garcia homicide do not appear in the CCSAO's document production in this case:

- The investigative file inventory;
- Stop order/missing person computer printout for Thomas Kelly;
- Investigative File Control Log;
- Photograph of Thomas Kelly;
- 02/23/1999 Crime Scene Processing Report;
- 01/28/1999 Criminal History of Angel Fonseca;
- 02/06/1999 Criminal History of Jose Tinajero;
- 02/06/1999 Margarita Casiano ICAM Search printed by Halvorsen;
- 02/08/1999 Criminal History of Margarita Casiano; and
- 02/13/1999 Jose Tinajero ICAM Search.

(SOF ¶ 145.) Tiderington also opines that Officer Defendants failed to document or disclose certain information, including contemporaneous notes of Guevara's and Halvorsen's interactions with witnesses, contemporaneous notes of the Officer Defendants' investigative steps, and contemporaneous notes of the interviews of Plaintiffs. (*Id.* at 68-9.)

These *Brady* claims must be dismissed because they were never alleged by Plaintiffs in their complaints or identified in their responses to Defendants' contention interrogatories. (SOF ¶ 130–132.) These claims must be mandatorily barred pursuant to Rule 37(c)(1). *Moran*, 54 F.4th at 497; *see also Salgado by Salgado v. Gen. Motors Corp.*, 150 F.3d 735, 742 (7th Cir. 1998); *Heidelberg Adm'r v. Manias*, No. 18-cv-01161-SLD-JEH, 2024 WL 1316206, at *20 n. 21 (C.D. Ill. Mar. 27, 2024).

Even if these claims were not automatically and mandatorily barred, they would still fail on the merits. Tiderington, as an opinion witness, is not competent to testify about what was or was not in the CCSAO's file at the time of Plaintiffs' July 2001 combined trial. Tiderington has no foundation to testify on that topic. While Federal Rule of Evidence 703 permits an expert witness to testify about the underlying facts that form the basis of his opinions, Tiderington is not offering an opinion here. Instead, he is trying to establish the truth of the underlying fact that certain documents were not produced. *See, In re James Wilson Assoc.*, 965 F.2d 160, 172–74 (7th Cir. 1992) ("[I]n explaining his opinion an expert witness normally is allowed to explain the facts underlying it, even if they would not be independently admissible. But the judge must make sure that the expert isn't being used as a vehicle for circumventing the rules of evidence"). Additionally, Plaintiffs have not alleged and cannot show that any of these documents were (1) favorable to their defense; (2) intentionally or recklessly concealed, or (3) material. *Moran*, 54 F.4th at 492.

As for Tiderington's opinion that Officer Defendants failed to take contemporaneous notes, as explained, *supra* §IV.b., Officer Defendants were under no obligation to do so. *Saunders-El*, 778 F.3d at 562 ("*Brady* does not require the creation of exculpatory evidence, nor does it compel police officers to accurately disclose the circumstances of their investigations to the prosecution"). Therefore, these undisclosed *Brady* claims buried in Tiderington's expert report fail and must be dismissed.

**e. Plaintiffs have not specifically identified any other evidence that was allegedly suppressed.**

In their responses to Defendants' contention interrogatories, Martinez and Kelly state that Defendants "suppressed that they collected evidence that pointed instead to other suspects," and "suppressed additional evidence that would have exculpated Plaintiff[s], hiding that information from Plaintiff[s], [their] attorneys, and state prosecutors." (SOF ¶¶ 130–131.) However, Martinez

and Kelly have not identified any such evidence, nor are Movants aware of any such evidence adduced in discovery, warranting dismissal of any related *Brady* claims. *Roberts*, 186 F.3d at 995.

**f. Because the culpability standard necessary for a civil *Brady* claim remains in flux, Defendants are qualifiedly immune from *Brady* liability.**

While the Seventh Circuit has made clear that "Section 1983 claims cannot be founded on negligence," *Loubser v. Thacker*, 440 F.3d 439, 442 (7th Cir. 2006), it has been unable to settle on the specific heightened standard of culpability to govern § 1983 *Brady* claims. Last year, the Seventh Circuit conceded that it "ha[s] not resolved whether reckless conduct can create liability for a *Brady* suppression claim." *Mims v. City of Chicago*, 155 F.4th 970, 975 (7th Cir. 2025). Instead, the court presumed that officers must have "acted intentionally or at least recklessly" in concealing evidence. *Id.* (citation and internal quotation marks omitted). But even a threshold of intentionality—which, again, the Court has *not* instituted outright—would put the Seventh Circuit at odds with those circuits that follow *Arizona v. Youngblood*, 488 U.S. 51 (1988) to require bad faith before *Brady* liability can be imposed. *E.g., Owens v. Balt. City State's Att'ys Off.*, 767 F.3d 379, 396 (4th Cir. 2014) (*Brady* violation required that "[o]fficers suppressed the evidence in bad faith"); *Villasana v. Wilhoit*, 368 F.3d 976, 980 (8th Cir. 2004) ("bad faith standard should likewise apply to due process claims that law enforcement officers preserved evidence favorable to the defense but failed to disclose it").

As the Supreme Court routinely cautions, "'if judges…disagree on a constitutional question, it is unfair to subject police to money damages for picking the losing side of the controversy.'" *Pearson*, 555 U.S. at 245 (quoting *Wilson*, 526 U.S. at 618); *see Reichle v. Howards*, 566 U.S. 658, 669–70 (2012) (same). Here, the Seventh Circuit itself and its sister circuits more broadly have been unable to coalesce on a *Brady* culpability threshold. "If appellate judges sitting in quiet chambers can't agree on the law, why should an officer know what law is clearly established…?" *Aska*, 2026 WL 179545, at *13. Because the uncertainty in the law precludes officers from ascertaining the intent with which

they must act before *Brady* liability attaches, the right upon which Plaintiffs' civil *Brady* claims are premised is not clearly established, requiring qualified immunity.

## V. Martinez's and Kelly's Undeveloped Destruction of Evidence Claim Must Be Dismissed

In their Complaints, Martinez and Kelly allege "[U]pon information and belief, the Police Officer Defendants…destroyed additional evidence that is not yet known to Plaintiff[s]." (*Martinez* Dkt.70, First Amended Complaint (FAC) at ¶ 138; *Kelly* Dkt. 47, FAC at ¶ 138.) Likewise, in their answers to contention interrogatories, Martinez and Kelly state, "[Defendants] covered up their misconduct and destroyed or suppressed additional evidence that would have exculpated Plaintiff[s]." (SOF ¶¶ 130–132.) However, neither Plaintiff has ever identified any destroyed evidence.

A "destruction of evidence" due process claim derives from *Killian v. U.S.*, 368 U.S. 979 (1961), *Arizona v. Youngblood*, 488 U.S. 51, 58 (1988), and their progeny, which have fleshed out the duties and responsibilities for prosecutors and police vis-à-vis physical evidence generated in criminal investigations. For their destruction of evidence claim to survive summary judgment, Martinez and Kelly must show: "(1) the [Defendants] acted in bad faith; (2) the exculpatory value of the evidence was apparent before it was destroyed; and (3) the evidence was of such a nature that [Martinez and Kelly] [were] unable to obtain comparable evidence by other reasonably available means." *Jones v. York*, 34 F.4th 550, 559 (7th Cir. 2022) (citation and internal quotation marks omitted).

Any potential destruction of evidence claim by Martinez and Kelly must be dismissed for three reasons. <u>First</u>, this claim was not sufficiently identified in Martinez's and Kelly's discovery responses, resulting in waiver. *See, Moran*, 54 F.4th at 497. <u>Second</u>, Martinez and Kelly have failed to identify any evidence that was destroyed. *Roberts*, 186 F.3d at 995 (Plaintiffs must cite evidence permitting a jury to find in their favor). And <u>third</u>, even if Martinez and Kelly had identified evidence that was

destroyed, they have not satisfied any of the other elements of the claim. *Jones*, 34 F.4th at 559. Thus, any potential destruction of evidence claim must be dismissed.

## VI. Summary Judgment Is Warranted on Plaintiffs' Failure to Intervene Claims

A plaintiff states a federal claim for failure to intervene by showing that a "constitutional violation has been committed by a law enforcement official; and the [defendant] had a realistic opportunity to intervene to prevent the harm from occurring." *Yang v. Hardin*, 37 F.3d 282, 285 (7th Cir. 1994). Under § 1983, failure to intervene is a "way to prove the liability of a state actor who was not a direct participant in the challenged wrongdoing." *Fields v. City of Chicago*, No. 10 C 1168, 2014 WL 477394, at *10 (N.D. Ill. Feb. 6, 2014).

First, "for there to be a failure to intervene, it logically follows that there must exist an underlying constitutional violation," *Rosado v. Gonzalez*, 832 F.3d 714, 718 (7th Cir. 2016) (citation and internal quotation marks omitted). Thus, to the extent Plaintiffs have failed to survive summary judgment on any underlying claim, Defendants are entitled to summary judgment on the corresponding failure to intervene claim.

Second, with respect to Plaintiffs' coerced confession claims, any contingent failure to intervene claims against Mohan and Halvorsen must be dismissed because Plaintiffs have put forth no evidence that either of them were present for Plaintiffs' confessions or had a realistic opportunity to intervene in the alleged misconduct. Likewise, there is no evidence that Troche was present or had an opportunity to intervene in the allegedly coerced confessions of Tinajero or Kelly, so he must be dismissed from those two Plaintiffs' claims that he failed to intervene in the alleged coercion of their confessions. *See, Chavez v. Ill. State Police*, 251 F.3d 612, 652 (7th Cir. 2001) ("even if there had been a constitutional violation, [Defendants] would not have been present and thus would have been unable to intervene, rendering [them] not liable").

Third, with respect to Plaintiffs' claims that Defendants failed to intervene in their Fourteenth Amendment fair trial violations, Defendants are qualifiedly immune because it was not clearly established in July 2001 (Plaintiffs' trial date) that officers violate the Constitution by failing to intervene in the fabrication, suppression, or destruction of evidence. To overcome qualified immunity, Plaintiffs must show that their theory of failure-to-intervene liability was "clearly established at the time of the violation such that a reasonable official would understand that what he is doing violates that right." *Findlay v. Lendermon*, 722 F.3d 895, 899 (7th Cir. 2013) (citation and internal quotation marks omitted).

Plaintiffs cannot meet that burden. The seminal decision recognizing failure to intervene, *Byrd v. Brishke*, held only that officers who failed to stop an ongoing beating in their presence—a Fourth Amendment excessive force violation—could be held liable for failing to intervene in that excessive force. 466 F.2d 6, 11 (7th Cir. 1972). Between *Byrd*'s issuance in 1972 and the alleged misconduct here in July 2001 (the fair trial claims), no Seventh Circuit or Supreme Court decision expanded the tort to encompass the sort of Fourteenth Amendment due process claims lodged by Plaintiffs.

That historical limitation is dispositive. "The dispositive question is whether the violative nature of *particular* conduct is clearly established," which demands that a right be established in "the specific context of the case, not as a broad general proposition." *Mullenix*, 577 U.S. a 12 (citations and internal quotation marks omitted). Because the conduct at issue was not clearly established to violate the Constitution at the time of the alleged violation, qualified immunity must attach.

Fourth, Seventh Circuit Judge Frank Easterbrook cast doubt on the viability of the failure to intervene theory of § 1983 liability, explaining that "'[f]ailure to intervene' sounds like vicarious liability," which is untenable, as "[t]he Supreme Court has held many times that §1983 supports only direct, and not vicarious, liability." *Mwangangi v. Nielsen*, 48 F.4th 816, 834 (7th Cir. 2022) (Easterbrook, J., concurring) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 676–77 (2009); *Monell v. N.Y. City*

*Dep't of Soc. Servs.*, 436 U.S. 658 (1978)). Defendants recognize that this Court is bound to follow *Byrd*, which created the claim, but raise the argument that such jurisprudence is out of step with *Monell* to preserve the defense.

## VII. Plaintiffs' Federal & State Conspiracy Claims Also Fail

### a. Absence of underlying tort violations requires dismissal of conspiracy claims.

"[C]onspiracy is not an independent basis of liability in § 1983 actions," *Smith v. Gomez*, 550 F.3d 613, 617 (7th Cir. 2008), and it "is not an independent tort" when brought under Illinois state law. *Tri-Plex Tech. Servs., Ltd. v. Jon-Don, LLC*, 2024 IL 129183, ¶ 41. Like failure to intervene, conspiracy claims are derivative of the federal and state law direct liability claims, and where those underlying claims fail, so too do the conspiracy claims. *Gill*, 850 F.3d at 344.

### b. There is no evidence to support Plaintiffs' conspiracy claims.

To establish liability for a conspiracy under § 1983, a plaintiff must show that "(1) the individuals reached an agreement to deprive him of his constitutional rights, and (2) overt acts in furtherance actually deprived him of those rights." *Beaman v. Freesmeyer*, 776 F.3d 500, 510 (7th Cir. 2015). A civil conspiracy under Illinois law carries the same two requirements, except that it is concerned with an agreement to act unlawfully rather than unconstitutionally. *Chi. Title Ins. Co. v Sinikovic*, 125 F. Supp. 3d 769, 781 (N.D. Ill. 2015). A "defendant who innocently performs an act which happens to fortuitously further the tortious purpose of another is not liable under the theory of civil conspiracy." *Turner v. Hirschbach Motor Lines*, 854 F.3d 926, 930 (7th Cir. 2017).

"Although the existence of a conspiracy may be established through circumstantial evidence, the evidence may not be speculative." *Chi. Title*, 125 F. Supp. 3d at 781. "Moreover, the circumstantial evidence 'must be clear and convincing.'" *Id.* (quoting *McClure v. Owens Corning Fiberglas Corp.*, 720 N.E.2d 242, 258 (1999)). "A defendant's '[m]ere knowledge of the fraudulent or illegal actions of another is also not enough to show a conspiracy." *Chi. Title*, 125 F. Supp. 3d at 782 (quoting

*McClure*, 720 N.E.2d at 258). "In determining if a conspiracy exists, '[i]f the facts are as consistent with innocent conduct as they are with guilty conduct, then the evidence is neither clear nor convincing." *Chi. Title*, 125 F. Supp. 3d at 782 n.7 (quoting *Lozman v. Putnam*, 884 N.E.2d 756, 774 (Ill. App. Ct. 2008)).

Here, Plaintiffs have no evidence—circumstantial or otherwise—of a conspiratorial agreement involving Defendants. Plaintiffs' federal and state law conspiracy claims therefore fail. *See, Grayson v. City of Aurora*, 157 F. Supp. 3d 725, 744–45, 747 (N.D. Ill. 2016) (rejecting Illinois and § 1983 conspiracy claims based on same analysis that there was no evidence of an agreement).

**c. Plaintiffs' federal conspiracy claims fail as there are no private actor defendants.**

First, "To establish § 1983 liability through a conspiracy, a plaintiff must demonstrate that…a state official ***and a private individual(s)*** reached an understanding to deprive the plaintiff of his constitutional rights…" *Cooney v. Casady*, 735 F.3d 514, 518 (7th Cir. 2013) (quoting *Lewis v. Mills*, 677 F.3d 324, 333 (7th Cir. 2012)) (emphasis added). A federal "conspiracy claim is superfluous" where "all named defendants are state actors." *Turley v. Rednour*, 729 F.3d 645, 649 (7th Cir. 2013).

Plaintiffs' § 1983 conspiracy claims cannot proceed as a matter of law because "all named defendants are state actors." *Id.*; *see id.* at 649 n.2 ("the function of a [federal] conspiracy claim…is to 'permit recovery from a private actor who has conspired with state actors,'" such that "[w]hen, as here, the defendants are all state actors, 'a [federal conspiracy] claim does not add anything except needless complexity'") (quoting *Fairley v. Andrews*, 578 F.3d 518, 526 (7th Cir. 2009)); *see also Caparelli v. Town of Merrillville*, No. 2:24-CV-67-GSL-APR, 2025 WL 1147748, at *7–8 (N.D. Ind. Mar. 18, 2025) (dismissing § 1983 conspiracy claim "because a civil conspiracy claim requires a state actor to conspire with a private actor," which plaintiff failed to allege) *Hernandez v. City of Peoria*, No. 19 CV 01153, 2022 WL 22624877, at *8 (C.D. Ill. Aug. 5, 2022) (granting summary judgment to defendants

on the "claim of conspiracy under § 1983, as only state actors are at issue and [plaintiff] does not allege any involvement in a conspiracy by private individuals").

Second, Defendants submit that the no-private-actor is the binding rule in the Seventh Circuit. But should the Court find that it is not so certain—i.e., there is uncertainty in the law over whether municipal employees can violate the Constitution via a conspiracy solely with other state actors—qualified immunity must attach. Where there exists "uncertainty in[] the law" over whether certain conduct "could give rise to a [constitutional] violation," the law is "not clearly established" and qualified immunity must enter. *Reichle*, 566 U.S. at 670.

**VIII. Martinez's and Kelly's State Law Willful & Wanton Conduct Claims Fail**

Martinez and Kelly allege claims of willful and wanton conduct, but Tinajero does not. (*See generally*, *Tinajero* Dkt. 62, Amended Complaint.) For decades, Illinois courts have made clear that there is no separate and independent state law tort of "willful and wanton" misconduct. *Jane Doe-3 v. McLean Cnty. Unit Dist. No. 5 Bd. of Dirs.*, 2012 IL 112479, ¶ 19 (holding that in Illinois, there is no separate, independent tort of willful and wanton conduct); *Krywin v. Chi. Transit Auth.*, 938 N.E.2d 440, 452 (Ill. 2010) (same); *Ziarko v. Soo Line R.R. Co.*, 641 N.E.2d 402, 406 (Ill. 1994) (same); *see also Lurry v. City of Joliet*, No. 20-cv-4545, 2025 WL 1331792, at *30 (N.D. Ill. May 7, 2025) (granting summary judgment on willful and wanton conduct claim because "Illinois does not recognize a standalone claim for willful and wanton conduct").

Rather, willful and wanton conduct "is regarded as an aggravated form of negligence and can be pleaded as such by alleging the basic elements of a negligence claim—duty, breach, and causation—as well as either a deliberate intention to harm or a conscious disregard for the plaintiff's welfare." *Pennington v. Flora Cmty. Unit Sch. Dist. No. 35*, No. 3:20-cv-11, 2023 WL 348320, at *4 (S.D. Ill. Jan. 20, 2023) (internal quotation omitted). Willful and wanton conduct "is appropriately understood as a form of aggravated negligence where the plaintiff must prove: (1) the defendant owed the plaintiff a

duty; (2) the defendant breached that duty; (3) the plaintiff suffered an injury that proximately resulted from the defendant's breach; and (4) the defendant's breach of duty was not merely negligent, but was done with 'conscious disregard for the welfare of the plaintiff.'" *Johnson*, 2025 WL 903813, at *39 (quoting *Gonzalez-Loza v. Downey*, No. 19 C 3046, 2023 WL 6198787, at *10 (N.D. Ill. Sept. 22, 2023)).

In order to recover damages, a plaintiff must plead and prove the basic elements of a negligence claim and *additionally show* either a deliberate intention to harm or a conscious disregard for the plaintiff's welfare. *Jane Doe-3*, 2012 IL 112479, ¶ 19. "A qualitative difference necessarily exists between willful and wanton misconduct and ordinary negligence; willful and wanton misconduct should shock the conscience." *Romito v. City of Chicago*, 2019 IL App (1st) 181152, ¶ 30. "Inadvertence, incompetence, or unskillfulness does not constitute willful and wanton conduct." *Floyd ex rel. Floyd v. Rockford Park Dist.*, 355 Ill. App. 3d 695, 701 (2d Dist. 2005).

Here, Martinez and Kelly have failed to sufficiently identify duty, breach, or a deliberative intention to cause harm or conscious disregard for their welfare. In their complaints, both Martinez and Kelly allege that Defendants "had a duty to refrain from willful and wanton conduct." (*Martinez* Dkt. 70, FAC, ¶ 189; *Kelly* Dkt. 47, FAC, ¶ 193.) Martinez then alleges, "Defendants acted willfully and wantonly through a course of conduct that showed an utter indifference to, or conscious disregard of, Plaintiff's rights." (*Martinez* Dkt. 70, FAC, ¶ 190.) For his part, Kelly alleges Defendants engaged in willful and wanton conduct by "fabricating evidence, coercing a false confession, and suppressing exculpatory evidence, in addition to the other misconduct alleged in this complaint." (*Kelly* Dkt. 47, FAC, ¶ 194.) Martinez and Kelly provide no further clarification in their answers to interrogatories.

These allegations are so vague and amorphous that it is impossible to discern what the alleged duty was, how it was breached, and how the breach was done deliberately or with "conscious

disregard" for Martinez's and Kelly's welfare. *Fletcher v. Bogucki*, No. 20-cv-04768, 2021 WL 4477968, at *7–8 (N.D. Ill. Sept. 30, 2021) (plaintiff's allegation that officers had "duty to refrain from willful and wanton conduct in connection with the [ ] murder investigation" was "too vague to support a negligence claim"). To the extent that Martinez and Kelly might amorphously argue that Officer Defendants were generally negligent in their investigation of the Garcia homicide, they have never alleged that in their complaints or interrogatory answers. And regardless, Martinez and Kelly cannot identify any duty under Illinois law for police to conduct a diligent investigation.

To the extent Martinez's and Kelly's willful and wanton conduct claims are based on the fabrication and suppression of evidence, those claims are redundant and must be dismissed for the reasons stated *supra* §III–IV. Likewise, to the extent Kelly's willful and wanton conduct claim is based on an alleged coerced confession by Movants, that claim is redundant and must be dismissed for the reasons stated *supra* §II.c.

## IX. Movants Adopt Certain Arguments Made by Co-Defendant Guevara

Movants hereby adopt and incorporate the arguments set forth in Defendant Guevara's separately filed memorandum of law in support of summary judgment regarding the following: (1) Plaintiffs' Fourteenth Amendment fabricated confession claims, (Guevara Memo of Law at §V–VI); (2) Plaintiffs' federal malicious prosecution claims, including qualified immunity, (*id.* at §VII.A.–B.); (3) Martinez's and Kelly's state malicious prosecution claims, (*id.* at §VII.A.); and (4) Martinez's and Kelly's IIED claims, (*id.* at §VIII).

## CONCLUSION

WHEREFORE, Defendants respectfully request that his Honorable Court grant their motion for summary judgment and grant such other additional relief as this Court deems equitable and just.